2024 IL App (1st) 232164

No. 1-23-2164B

Second Division
February 2, 2024

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 23-MC-1112731 |
| v. | ) | |
| | ) | |
| STEPHON PARKER, | ) | Honorable |
| | ) | William N. Fahy |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Howse concurred in the judgment and opinion.
Justice Ellis specially concurred, with opinion.

**OPINION**

¶ 1    On October 3, 2023, defendant-appellant, Stephon Parker, was arrested and charged with

unlawful possession of a weapon by a felon, a Class 3 felony, pursuant to section 24-1.1(a) of the

Criminal Code of 2012 (Criminal Code) (720 ILCS 5/24-1.1(a), (e) (West 2022)).[1] Defendant was

_____

[1]Section 24-1.1(a) provides that it is "unlawful for a person to knowingly possess on or about his person or on his land or on his own abode or fixed place of business any weapon prohibited under Section 24-1 of [the Criminal Code] or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2022). Section

also charged with five misdemeanor counts of resisting/obstructing a peace officer or correctional employee pursuant to section 31-1(a) of the Criminal Code (*id.* § 31-1(a)).

¶ 2 On October 4, 2023, the State filed a verified petition for a pretrial detention hearing pursuant to sections 110-2 and 110-6.1 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/110-2, 110-6.1 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly referred to as "the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act" or the "Pretrial Fairness Act" (Act). See Pub. Act 101-652, § 10-255 (eff. Jan. 1, 2023); 102-1104, § 70 (eff. Jan. 1, 2023); Ill. S. Ct. R. 604(h)(1) (eff. Oct. 19, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). After appointing counsel for defendant and hearing argument on the petition, the circuit court granted the State's petition.

¶ 3 On appeal, defendant argues that the court's denial of pretrial release was in error for two reasons. First, defendant contends that the court abused its discretion in failing to consider that evidence of the charged crime may have been obtained as the result of an unlawful search and seizure. Second, defendant maintains that the State failed to meet its burden of proving, by clear and convincing evidence, that he posed a real and present threat to the safety of any person or the community. For the following reasons, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5                              A. Pretrial Detention Petition

¶ 6 On October 4, 2023, the State filed its verified petition for pretrial detention. Therein, the State argued that defendant's charged offense of unlawful use of a weapon by a felon was an

---

24-1 of the Criminal Code further delineates the types of prohibited weapons, firearms, and firearm ammunition under the code. See *id.* § 24-1.

eligible offense for pretrial detainment pursuant to section 110-6.1(a)(6) of the Procedure Code (725 ILCS 5/110-6.1(a)(6) (West 2022)). Next, the State argued that defendant posed a "real and present threat to the safety of any person or persons or the community" because he "was in possession of a 9 [millimeter] semi-automatic handgun with a live round in the chamber and live rounds in an extended magazine and resisted officers in the course of being placed into custody." The State indicated that defendant was a "multiple time convicted felon and was discharged from parole in 2021 for a firearm conviction, and ha[d] a conviction for a violent offense in addition to convictions for escaping electronic monitoring and robbery." Last, the State alleged that there was "[n]o condition or combination of conditions set forth in 725 ILCS 5/110-10(b) *** to mitigate that risk."

¶ 7      Although it is not clear as to whether the following items were attached to the State's petition, the record reflects that a supplemental "Public Safety Assessment" conducted by "pretrial services" indicated that defendant's "criminal activity" score was a "4" out of "6" and that his "failure to appear" score was a "2" out of "6." The report further indicated that defendant had a prior misdemeanor conviction, a prior felony conviction, two prior "violent" convictions, and a prior sentence of incarceration. As such, its release recommendation was a "[p]retrial [s]upervision [l]evel 1." The report also noted that defendant had two children, was currently employed full-time as a custodian, and had been with his company for about half a year. Defendant had also self-reported that he had a history of mental illness for which he had received treatment and a diagnosis of post-traumatic stress disorder or "PTSD."

¶ 8                          B. Pretrial Detention Hearing

¶ 9    On October 4, 2023, at defendant's initial appearance following his arrest, the circuit court preliminarily noted that "Gerstein[2] [was] satisfied" and that "there [was] a finding of probable cause." Subsequently, the court appointed a public defender for defendant and granted the State leave to file its petition.[3] The State indicated that it had provided defendant's counsel with copies of the petition, incident and arrest reports, and defendant's criminal history.[4] Defendant's counsel acknowledged receipt and indicated that defendant was ready to proceed with the hearing.

¶ 10                              1. The State's Proffer

¶ 11    The State subsequently proffered the following in support of its petition.[5] On October 3, 2023, at approximately 6 p.m., two plain-clothed Chicago police officers were on routine patrol in an unmarked vehicle with police insignia near the 4200 block of West Lake Street and Kildare Avenue. While on patrol, the two officers observed defendant walking eastbound on Lake Street. Defendant turned and looked in the officers' direction and was reported to have "widened" his eyes. In order to get a better view of defendant, the officers drove their vehicle closer to defendant's location and observed a "heavily downward weighted satchel" across his body. They further observed defendant move the satchel from the front of his body to underneath his right armpit in what they believed to be an attempt to conceal its contents.

---

[2]"Gerstein" refers to *Gerstein v. Pugh*, 420 U.S. 103, 112, 125 (1975), in which the United States Supreme Court held that a defendant arrested without a warrant and charged by information must be promptly presented to a neutral magistrate for a determination as to whether probable cause to arrest exists.

[3]Appointment of an attorney is required under section 110-5(f) of the Procedure Code. 725 ILCS 5/110-5(f) (West 2022).

[4]We note that the record does not contain any documentary evidence as to defendant's prior criminal history.

[5]We have combined the State's factual proffers both during the hearing and the written materials contained in the record together for purposes of efficiency.

¶ 12    The officers remained in the vehicle but attempted to make contact and conduct a field interview with defendant. In response, defendant continued walking eastbound with "eyes widened" and repeatedly stated, "I do not consent to any searches" while continuing to "firmly" hold the satchel in place under his right armpit. As such, the officers believed that defendant was concealing a firearm and began to exit their vehicle.

¶ 13    Upon the officers' exit from the vehicle, defendant stopped walking, "bladed his stance," and slowly began backing up. Defendant's eyes remained "widened," and he began to scan the area. Based on the officers' experience with multiple "UUW arrests" and their assessment of defendant's behavior, the officers continued to "reasonably" believe that he was concealing a weapon and proceeded to do a protective pat-down of defendant's satchel. One of the arresting officers grabbed the inside of the satchel and felt a hard "L"-shaped object consistent with the shape of a firearm. The officer then reached inside of the satchel and confirmed it as such. However, defendant began pulling away from the officer while stating "that's not a gun" and began to resist the officer's attempts to recover the firearm and place him in handcuffs. During the struggle, defendant dropped the satchel to the ground, which revealed a 9-millimeter, semiautomatic handgun loaded with a live round in the chamber, as well as other live rounds and an extended magazine.

¶ 14    At some point during the struggle, three other assisting officers arrived on the scene and helped to place defendant in handcuffs, while one of the original arresting officers recovered the firearm. The arresting officers asked whether defendant had a concealed carry license (CCL) or Firearm Owner's Identification (FOID) card on his person, to which defendant did not respond. Defendant was then transported for processing. After the arresting officers performed an Illinois Law Enforcement Agencies Data System (LEADS) inquiry, it was confirmed that defendant was

not registered for a valid CCL or a FOID card. Further, it was determined that defendant was a registered gun offender and convicted felon.[6] An inventory report further showed that, upon processing, the police department confirmed intake of the firearm, as well as one "black magazine with an unknown amount of ammunition" and one live round/bullet.

¶ 15    With regard to defendant's criminal history, the State indicated that defendant was a four-time convicted felon and had recently been discharged from parole in 2021 stemming from a 2020 Class 3 felony conviction for unlawful possession of a firearm, for which he had received a two-year sentence. The State further noted that defendant had also been convicted of aggravated battery of a police officer, which had also included a "PSMV"[7] charge, and had served a five-year sentence with the Illinois Department of Corrections in accordance with that conviction. Defendant's other criminal history included a 2017 conviction for escaping electronic monitoring, a 2016 robbery conviction for which he served 24 months of probation, which had terminated unsatisfactorily, and a 2016 misdemeanor battery conviction.

¶ 16    Next, the State argued that defendant posed a real and present threat to the safety of any person, persons, or the community based on the specific and articulable facts of the case. The State pointed to the fact that defendant had possessed a firearm that had been "ready to fire with a live round in the chamber" and "live rounds in an extended magazine" and that he had also resisted arrest in the course of being placed into custody. The State further referenced defendant's multiple convictions, one of which was similar to his current charge and others that were violent in nature.

---

[6]The arrest report indicated that defendant was a convicted felon pursuant to "case # 15-CR-1677001."

[7]Given that the record does not contain any documentary evidence as to defendant's prior criminal history, the meaning of this abbreviation is not clear, and we decline to ascribe one here.

Finally, the State contended that there was no condition or combination of conditions based on defendant's history and the facts of the current case that could mitigate the risk to the public.

¶ 17                    2. Pretrial Services Assessment

¶ 18    Next, the court asked for the recommendation of a representative from "pretrial services," who indicated that defendant's "new criminal activity" score was a "4 out of 6," that his "failure to appear" score was "2 out of 6," and that his overall "PSA score coincide[d] with Pretrial Supervision Level 1."[8]

¶ 19                 3. Defendant's Argument in Mitigation and for Pretrial Release

¶ 20    In mitigation, defendant stated that he was 26 years old and a lifelong resident of Cook County. Defendant was a high school graduate, had worked full-time for the last six months as a custodian, currently lived with his parents, and had two children that he helped support.

¶ 21    Next, defendant argued that the State was unable to meet its burden on its petition. First, defendant argued that the State had failed to present "clear and convincing evidence" in that the "proof [was] not evident nor is the presumption great" that defendant committed the charged offense. Defendant stated that, pursuant to section 110-6.1(f)(6) of the Procedure Code, the court could consider the "weight of the evidence at this stage" and "whether the evidence of the charged crime may have been a result of an unlawful search or seizure." See 725 ILCS 5/110-6.1(f)(6) (West 2022). Defendant contended that the facts leading to his arrest implicated "significant" fourth amendment concerns. Specifically, defendant argued that the police officers had conducted an unlawful stop pursuant to the United States Supreme Court case of *Terry v. Ohio*, 392 U.S. 1

---

[8]It is not apparent in the record what "Pretrial Supervision level 1" means for purposes of our review. We only note that defendant later argued before the court that supervision level one could be appropriate for pretrial conditions such as supervision or global positioning system or electronic monitoring.

(1968), in that they did not have reasonable articulable suspicion to detain him. Defendant noted that, per the arrest report, he had been noticed by officers simply because he had "allegedly widened his eyes" when looking at their vehicle, which the report indicated was unmarked and the police officers in plain clothes. Even if the officers were wearing their police stars, defendant continued, nothing in the record demonstrated that any of these items were visible to him to know that they were law enforcement officers, especially while they remained in their vehicle.

¶ 22    Next, defendant challenged the officers' observation of his weighted satchel as sufficient to conduct a *Terry* stop. Even assuming that the officers did have reasonable suspicion that he was in possession of a firearm, defendant pointed out even reasonable articulable suspicion on its own was insufficient to justify a frisk or protective pat-down search following a lawful stop, as the officer also needed to have a reasonable belief that the individual was presently dangerous, citing *People v. Flunder*, 2019 IL App (1st) 171635, in support. Defendant noted that the record failed to demonstrate any evidence to support any belief that he had been presently dangerous, such as through a 911 call regarding "a person with a gun" or any other articulable threats. According to defendant, the officers' frisk was also unjustifiable under *Flunder* because the officers did not have any knowledge as to whether defendant possessed a CCL or FOID card, as demonstrated by the officers' inquiry as to both after he was already placed in handcuffs.

¶ 23    Next, defendant challenged the State's assertion that he was a clear and present danger. Specifically, he argued that he was not a danger to the community simply by possessing a firearm, especially considering that he had not used or brandished the weapon. As to his criminal convictions, he stated that such activity was not "recent" and that pretrial services had not reported a "new violent flag" in its assessment. Last, defendant contended that there were conditions that could both ensure his return to court as well as the safety of the community, given his "level one"

rating from pretrial services, and thus he could be subject to pretrial supervision and global positioning system or electronic monitoring.

¶ 24                    4. The State's Reply

¶ 25    The State maintained that defendant's release should be denied. First, the State addressed defendant's fourth amendment contention by arguing that there were "no fourth amendment motions" before the court for purposes of the pretrial hearing and, even assuming there were, the State would be successful on the merits. The State pointed out that the officers had responded to defendant's efforts to conceal the weighted satchel by shifting it across his body after he observed their presence, which indicated that defendant recognized them to be police officers. The State further noted that defendant had consistently stated that he did not consent to a search while walking away from the officers. The State also rejected defendant's characterization of his criminal history as "not recent," as he had only been discharged from parole in November 2021. Last, with regard to conditions, the State pointed out that defendant had a history of failing to follow conditions as set by the court, as shown by his 2017 conviction for escaping electronic monitoring and unsatisfactory termination of probation.

¶ 26                    C. Circuit Court Ruling

¶ 27    At the conclusion of the hearing, the court orally granted the State's request and denied pretrial release. First, with regard to the first element for pretrial detention, the court made the following findings.

> "THE COURT: First, I do find that the petition is properly filed. The defendant is charged with a detainable offense. So *** having found that, first, I have to determine whether the State has shown by clear and convincing evidence that the proof is evident or the presumption is great that you did, in fact, commit this offense of unlawfully possessing

a firearm having previously been convicted of a felony. Here I have to look at—I'm relying on the State's proffer. Your lawyer has made some excellent points with regard to possible 4th amendment issues down the road. But what I have before me is that law enforcement sees you walking on the street, you're carrying some type of satchel bag that appeared to be weighted down in the front of your body, and apparently, when you look in the direction of the law enforcement officers, you immediately move the satchel, and what they interpreted, and, again, I'm relying on the State's proffer here from what they're describing as an attempt to conceal the satchel. You continue to walk away as they try to contact you and make statements of 'I do not consent to any searches.'

Given the totality of what the officers observed, and again, I haven't heard the officer's testimony, and your lawyer hasn't had an opportunity to cross-examine this particular officer, but that law enforcement officer believed you were carrying a firearm, they attempted to pat you down or pat down the satchel, at least, and when that happens at some point that's when the resistance begins. And when you pull away, apparently, this firearm, I believe, fell to the ground, the satchel with the firearm in it, and the firearm is recovered from the satchel that you were carrying. So, clearly, I do believe that the proof is evident and the presumption is great that you were in possession of this firearm.

Having said that, and as I've already commented on, [your attorney] raises some excellent points with regard to the 4th amendment issues that will be heard prior to trial. But I do believe that the State has met its burden in establishing that you were in possession of that firearm. And the firearm that was in your possession was a nine-millimeter apparently loaded with an extended magazine."

¶ 28    Next, with regard to the petition's second element, the court made the following findings:

"THE COURT: Next, I must determine whether or not you pose a real and present threat to the safety of others if you were to be released from custody. With regards to that, I have to consider the nature of the offense. I agree with [your attorney]; a firearm by itself is not dangerous. But a firearm like this with an extended magazine that's loaded in the hands of someone who has been convicted for four prior felonies[,] recently for a weapons charge is dangerous. You don't have a CCL. You cannot carry a firearm. There's four reasons why you can never be near a firearm, so therefore, the fact that based upon your background and based upon the weapon that was in your possession at this time, I do find that you pose a real and present threat to the physical safety of others."

¶ 29    Last, with regard to the petition's third element, the court made the following findings:

"THE COURT: Next, I must determine if there are any conditions or combinations of conditions of release that could mitigate the real and present threat. In other words, try to determine if there is something other than pretrial detention that can mitigate this threat of your release. Here, I am taking into consideration the pretrial score of four and a two with the recommendation of Level 1 supervision. I am also taking into consideration your lawyer's arguments, which were well reasoned and thoughtful, not only with regards to the 4th amendment, but to possible conditions of release. I've taken into consideration that you're 26 years of age, and you've recently been working as a custodian. However, I also have to take into consideration that one of your recent felony convictions was for escape from electronic monitoring. I also have to take into consideration you were recently convicted of a weapons offense. I have to take into consideration that you were also convicted of a crime of violence, robbery, and also a misdemeanor crime of violence, a battery.

Given the totality of what I've heard, I don't believe there is a condition or set of conditions that I can fashion that would mitigate this real and present threat. So I'm going to order—I'm going to grant the State's petition and order you detained."

¶ 30    The court's oral ruling was memorialized in a written order that same day. Therein, the court made the following findings. First, the court found that "[t]he proof [was] evident or the presumption great that the defendant ha[d] committed an eligible offense listed" within section 110-6.1(a) of the Procedure Code (725 ILCS 5/110-6.1(a) (West 2022)), namely "unlawful use of a weapon by a felon." Second, the court found that the "defendant pose[d] a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," where defendant "was in possession of a loaded firearm with an extended magazine and ha[d] an extensive criminal history." Third, the court found that "[n]o condition or combination of conditions set forth" in section 110-10(b) of the Procedure Code could "mitigate the real and present threat to the safety of any person or persons or community based on the specific articulable facts of the case" and that "[l]ess restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific and articulable facts of the case." See *id.* § 110-10(b). As to this point, the court found that defendant had "an extensive criminal history that include[d] escape from electronic monitoring and crimes of violence."

¶ 31    This appeal followed.[9]

¶ 32                                    II. ANALYSIS[10]

---

[9]Despite defendant filing his notice of appeal on October 16, 2023, the notice was not transmitted to this court until November 17, 2023.

[10]At the outset, although neither party raises this concern, we must first address our jurisdiction over this appeal prior to evaluating its merits. This appeal comes to us from the granting of the State's petition for pretrial detention. Pursuant to article VI, section 6, of the Illinois Constitution, our supreme court has promulgated rules to allow for certain appeals in criminal, postconviction, and juvenile court

¶ 33                                    A. The Act

¶ 34    Given the newness of the statutory scheme at issue, as well as its numerous overlapping

considerations, we begin with a summary of the relevant sections of the Procedure Code, as

amended by the Act.

¶ 35                              1. The Petition and Hearing

¶ 36    The Procedure Code now presumes that all persons charged with an offense shall be

eligible for pretrial release prior to conviction. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022).

Therefore, "[p]retrial release may be denied *only* if a person is charged with an offense" as

delineated within section 110-6.1 of the Procedure Code, and if the court has conducted a

corresponding hearing. (Emphasis added.) *Id.* §§ 110-2(a), 110-6.1(e), (f). Pretrial detention

should only be ordered to effectuate the Act's goals, which include reasonable assurance of an

eligible person's appearance in court, ensuring the safety of any other person or the community,

the prevention of any attempt or obstruction of the criminal justice process, and ensuring

compliance with all conditions of release. *Id.* § 110-2(e).

¶ 37    The State will trigger the requirement for a pretrial detention hearing upon its timely filing

of a verified petition for detainment. *Id.* § 110-6.1(a). The State must prove three elements in its

petition, which it bears the burden of proving by clear and convincing evidence. *Id.* § 110-6.1(e).

First, it must show that the "proof is evident or the presumption great" that a defendant has

---

proceedings. See Ill. Const. 1970, art. VI, § 6. Relevant here, Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023) governs appeals from orders under the Procedure Code that grant petitions to deny pretrial release. Both the State and the defendant may appeal any interlocutory orders imposing conditions of pretrial release. 725 ILCS 5/110-5(k) (West 2022); see also Ill. S. Ct. R. 604(h), (h)(1)(iii) (eff. Oct. 19, 2023). A notice of appeal must be filed within 14 days of the order denying pretrial release. Ill. S. Ct. R. 604(h)(2) (eff. Oct. 19, 2023). Here, the record reflects that defendant timely appealed the court's interlocutory order denying his pretrial release. The order was entered on October 4, 2023, and defendant filed a notice of appeal on October 12, 2023. Therefore, we have jurisdiction over this appeal.

committed an eligible detainable offense. *Id.* § 110-6.1(e)(1). Second, for the eligible offense of unlawful possession of a firearm by a felon, the State must show that a defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of [his] case," which may include conduct involving a forcible felony, the obstruction of justice, intimidation, injury, or abuse. *Id.* § 110-6.1(a)(6), (e)(2). Third, the State must allege that there is "no condition or combination of conditions set forth" within the Procedure Code that could mitigate that real and present threat to the safety of any person, persons, or the community, based on the facts of the case. *Id.* § 110-6.1(e)(3). The State may utilize evidence of a defendant's available criminal history, any written or recorded statements, police reports, and evidence "by way of proffer based upon reliable information." *Id.* § 110-6.1(f)(1), (2); see *id.* § 110-6.1(f)(5) (evidentiary admissibility rules for criminal trials do not apply to pretrial detention hearings).

¶ 38    Following the filing of the State's petition, the circuit court must hold a hearing. See *id.* § 110-6.1(a), (c), (f). In addition to evaluating the merits of the petition, the court must also assess "whether there is probable cause the defendant has committed [the charged] offense." *Id.* § 110-6.1(b). If there is no such finding, the defendant must be released. *Id.* The court may utilize statewide risk-assessment tools to evaluate the likelihood of a defendant's appearances at future court proceedings or if the defendant poses a real and present threat. *Id.* § 110-6.4. Each decision regarding release is individualized, and no single factor or standard is determinative. *Id.* § 110-6.1(f)(7). If the court determines that there is probable cause and that the State has met its burden on its petition, the court must make a written finding summarizing its reasons for pretrial detention. *Id.* § 110-6.1(h).

¶ 39            2. Determining "Dangerousness" or a Real and Present Threat

¶ 40    One of defendant's bases for reversal of the detention order concerns the court's finding that he posed a real and present threat. In determining whether a defendant poses a real and present threat to the safety of any person or persons or the community, the court considers a variety of statutorily delineated factors to assess the defendant's "dangerousness." *Id.* § 110-6.1(g). Such factors are assessed against the "specific articulable facts of the case" and may include evidence or testimony concerning

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant ***[.][11]

* * *

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complainant.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

---

[11]The "history and characteristics of the defendant" are defined as including "(A) [a]ny evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior, or lack of such behavior," which may encompass "testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations, or other proceedings." 725 ILCS 5/110-6.1(g)(2)(A) (West 2022). It is also defined as "(B) [a]ny evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history." *Id.* § 110-6.1(g)(2)(B).

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial, sentencing, appeal or completion of sentence for an offense under federal or state law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.* § 110-6.1(g).[12]

¶ 41                              3. Conduct of the Hearing

¶ 42    Defendant's other basis for reversal concerns the portion of the Procedure Code regarding evidence possibly obtained through an unlawful search, seizure, or both. Although a defendant may testify and cross-examine any witnesses called by the State during the hearing, standard evidentiary and admissibility rules are otherwise inapplicable to the presentation or consideration of information at the hearing. *Id.* § 110-6.1(f)(3), (5). Further, although a defendant may not move

---

[12]Section 110-5(a) of the Procedure Code provides similar considerations for the circuit court in determining whether certain conditions of release are more appropriate than detainment. See 725 ILCS 5/110-5(a) (West 2022). Relevant here, the court may consider "(1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant, except that the court may consider the admissibility of any evidence sought to be excluded; (3) the history and characteristics of the defendant ***; (4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, that would be posed by the defendant's release, if applicable, as required under paragraph (7.5) of Section 4 of the Rights of Crime Victims and Witnesses Act; [and] (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release, if applicable." *Id.* § 110-5(a)(1)-(5). We further note that section 110-5(a) also provides a separate definition for the defendant's "history and characteristics" as delineated within section 110-5(a)(3). Therein, such factors include "(A) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug and alcohol abuse, history[,] criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." *Id.* § 110-5(a)(3)(A)-(B).

to suppress evidence at this stage, a defendant may argue that "proof of the charged crime may have been the result of an unlawful search or seizure, or both." *Id.* § 110-6.1(f)(6). The court may consider these arguments relevant when assessing the weight of the evidence. *Id.* Overall, decisions regarding detention prior to trial "must be individualized," and "no single factor or standard may be used exclusively to order detention." *Id.* § 110-6.1(f)(7). Additionally, the court may not solely rely on risk assessment tools as the sole basis to deny pretrial release. *Id.*

¶ 43                              C. Standard of Review

¶ 44    Before proceeding, we first address the applicable standard of review. As noted previously, defendant raises two arguments challenging his detention order. With regard to his fourth amendment argument, defendant posits that the standard of review is abuse of discretion, citing *People v. Whitmore*, 2023 IL App (1st) 231807. In contrast, in challenging the court's dangerousness finding, defendant points back to the language of section 110-6.1 of the Procedure Code, which dictates that the State must prove by "clear and convincing evidence" that a defendant poses and real and present threat. Clear and convincing evidence, as defendant correctly defines, amounts to the "quantum of proof that leaves no reasonable doubt in the fact finder's mind about the truth of the proposition in question" or "more than a preponderance while not quite reaching the degree of proof necessary to convict an individual of a criminal charge," citing *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12.

¶ 45    The State responds that the court's overall determination regarding pretrial detention is abuse of discretion, citing *People v. Inman*, 2023 IL App (4th) 230864. As such, the State posits, a reviewing court should give deference to the court's factual and credibility findings and should only reverse the ultimate judgment where it is found to be fanciful, arbitrary, or unreasonable.

¶ 46    There is, without question, some debate among the appellate districts, and even among the divisions in the First District, concerning the appropriate standard of review. See *People v. Herrera*, 2023 IL App (1st) 231801, ¶¶ 22-24 (observing split between districts regarding abuse of discretion and manifest weight of the evidence standard under the Act). Although the Procedure Code provides that the State's burden on a pretrial detention petition is "clear and convincing evidence," under the previous regime for bond hearings and their subsequent appeals, we often employed an abuse of discretion standard. See *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9; see also *Inman*, 2023 IL App (4th) 230864, ¶ 10. Because the new statute does not expressly provide for a new or different standard of review, some courts have determined that the abuse of discretion standard is applicable. See *Whitmore*, 2023 IL App (1st) 231807, ¶ 18 (noting no clear legislative intent within the new statute to disrupt such precedent); *Inman*, 2023 IL App (4th) 230864, ¶ 11 (observing that, in reviewing an appeal brought pursuant to Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023), "we are not reviewing the State's evidence anew" and instead "are reviewing the circuit court's evaluation of that evidence").

¶ 47    However, some decisions have stated that the circuit court's factual findings under the statute should be resolved under a manifest weight of the evidence standard. See *People v. Rodriguez*, 2023 IL App (3d) 230450, ¶ 8; *People v. Stock*, 2023 IL App (1st) 231753, ¶¶ 12-13. Others have said the same standard also applies when assessing whether conditions of pretrial release could mitigate any dangerousness posed by a defendant. See *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10. Others have also articulated the standard as *de novo*, even when evaluating the propriety of the circuit court's assessment of the proffered evidence and what condition or combinations may be appropriate. See *People v. Battle*, 2023 IL App (1st) 231838, ¶¶ 17-18; see also *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 65-123 (Ellis, J., specially concurring).

Finally, some decisions have employed a bifurcated standard of review, in which the manifest weight of the evidence standard applies to factual findings made by the court in assessing the first and second elements of the petition and the abuse of discretion standard is utilized to assess whether there were any conditions of release that could mitigate a defendant's posed risk. See *People v. Reed*, 2023 IL App (1st) 231834, ¶¶ 24, 31.

¶ 48    Without any further direction from our supreme court on this significant issue, we find a recent case from a panel within our district to be persuasive, namely *Saucedo*, 2024 IL App (1st) 232020. Therein, our court stated that "[r]eview of the decision to grant or deny a detention petition *** requires a mixed standard of review" because the circuit court's decision involves consideration of "three propositions." *Id.* ¶ 31. The court noted that, with regard to the first two elements of the detention petition—the circuit court's assessment of whether "the presumption raised that the defendant committed a detainable offense" and whether "the defendant poses a threat to a person or the community"—are ultimately "questions of fact that require a certain quantum of evidence: clear and convincing." *Id.* Additionally, the court observed, the factors used to consider whether a defendant poses a threat is based on the defendant's background and therefore are "matters of historical fact." *Id.* Thus, the court reasoned, because such determinations are ultimately questions of fact, the manifest weight of the evidence standard applies. *Id.* ¶¶ 32, 35; see *Reed*, 2023 IL App (1st) 231834, ¶ 24; *People v. Whitaker*, 2024 IL App (1st) 232009, ¶¶ 60-62, 68.

¶ 49    The first two elements of the petition that are challenged here do not allow for the court to exercise discretion on what *may* be considered. Rather, the statute is clear as to what facts should be utilized in determining whether there was, by clear and convincing evidence, a sufficient showing that the requisite detainable offense was committed, as well as the defendant's level of

dangerousness based on the facts of the alleged crime and relevant background information. These determinations ultimately require the circuit court's resolution of the State's factual proffer. See *Reed*, 2023 IL App (1st) 231834, ¶ 24 (applying manifest weight of the evidence standard to whether a defendant committed the charged offense and if he posed a danger to the community).

¶ 50    As such, we also find that the manifest weight of the evidence standard is appropriate for the first two elements of the petition at issue here. In reviewing both issues, we note that "[a] finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." (Internal quotation marks omitted.) *Stock*, 2023 IL App (1st) 231753, ¶ 12. We now turn to the merits of the appeal.

¶ 51                    D. Unlawful Search and Seizure

¶ 52    We note that defendant's first challenge to the detention order is not so consistent. In his form notice of appeal, defendant marked the boxes that indicated that he sought to challenge the court's finding that he posed a "real and present threat." Defendant also marked an "other" box under the section labeled "denial or revocation of pretrial release." Neither box, however, contained any further explanation as to why the court's findings were erroneous.

¶ 53    In the record, however, the notice of appeal contained a one-page supplement that was time-stamped by the clerk of the court, which appears to have been filed the same day of the form notice of appeal. The supplement contained further explanation as to why the court had erred in those same findings. In the explanation for the "other" grounds for reversal, the supplement stated:

> "*Other—The Court failed to consider evidence that proof of the charged crime may have been the result of an unlawful search or seizure when assessing the weight of the evidence against the [defendant].*

Pursuant to 725 ILCS 5/110-6.1(f)(6), it is relevant in assessing the weight of the evidence whether evidence of the charged crime may have been the result of an unlawful search or seizure. Here, the [c]ourt failed to consider Fourth Amendment issues regarding the unlawful search and seizure of [the defendant]. Specifically, the [c]ourt indicates that Fourth Amendment issues are to be considered down the road. Should the [c]ourt have considered the significant Fourth Amendment issues, the State would have failed to meet its burden in proving by clear and convincing evidence that the proof is evident or the presumption great that [the defendant] committed the offense charged." (Emphasis in original.)

¶ 54    In his memorandum, defendant's argument on this point is not so artfully drafted in that it is not immediately clear on which portion of the court's order he seeks reversal.[13] Defendant contends that "the court failed to consider evidence that proof of the charged crime may have been the result of an unlawful search or seizure when assessing the weight of the evidence against" defendant pursuant to section 110-6.1(f)(6) of the Procedure Code. Defendant then mentions that it is the State's burden to prove that, with regard to the first element of the petition, the proof is evident and the presumption great that a defendant committed a detainable offense. Here, defendant points out, the previous version of the statute expressly stated that evidence obtained as the result of an unlawful search or seizure, or both, was not relevant in weighing the evidence for detention. Now, defendant asserts, the amended Procedure Code allows for that consideration.

---

[13]Defendant first articulated his reasons for reversal in his notice of appeal. Then, pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Dec. 7, 2023), defendant elected to file a memorandum in support.

¶ 55    In response, the State construes this argument as a direct challenge to the court's first finding, whether the proof was evident and the presumption great that defendant committed the detainable offense. Therein, the State agrees with defendant that, during the hearing, although defendant cannot move to suppress evidence or a confession at the hearing, the Procedure Code allows for consideration of whether the evidence sustaining the detainable offense resulted from an unlawful search and seizure. However, the State contends that there is no such provision in the Procedure Code that supports the conclusion that "the mere existence of evidence of an unlawful search or seizure operates as an absolute bar to finding by clear and convincing evidence that a defendant committed a detainable offense." The State reasons that this is because the proceeding itself is "not concerned with the ultimate admissibility of evidence at a pending trial" and instead assesses "whether the defendant ought to be held in custody pending trial."

¶ 56    The parties' initial arguments require us to look to the text of the statute to determine its effects, if any, on the first element of a pretrial detention petition. The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the statutory language, given its plain and ordinary meaning. *People v. Clark*, 2019 IL 122891, ¶¶ 18, 20. We must review the statute as a whole and construe words and phrases in light of other relevant provisions. *Id.* ¶ 20. We must also keep in mind "the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another" and must further assume that the legislature did not intend absurd, inconvenient, or unjust results. *Id.*

¶ 57    As noted prior, section 110-6.1 of the Procedure Code provides the framework for filing the pretrial detention petition, which includes matters ranging from the State's overall burden, the conduct of the hearing, and the factors a court shall consider when evaluating the petition. With

regard to the first element, the Procedure Code provides that the State shall prove, by clear and convincing evidence, that the "proof is evident or the presumption great that the defendant has committed an offense listed in subsection (a)" of section 110-6.1 of the Procedure Code. 725 ILCS 5/110-6.1(e)(1) (West 2022). In turn, section 110-6.1(a)(1) provides that pretrial release may be denied if the defendant is "charged with a felony offense other than a forcible felony." *Id.* § 110-6.1(a)(1). Notably, in contrast to the petition's second element regarding "dangerousness" under section 110-6.1(g), the "proof is evident or presumption great" analysis does not contain any additional factors or qualifiers for the court to consider.

¶ 58    Section 110-6.1(f), titled "Conduct of the hearings," describes the general nature of the proceeding, including the State's tendering of certain documents to the defendant, such as the police report, defendant's criminal history, and any written or recorded statements. *Id.* § 110-6.1(f)(1). Both the State and defendant may proffer evidence based upon "reliable information." *Id.* § 110-6.1(f)(2). Further, the defendant also has the opportunity to testify, present witnesses on his behalf, and to cross-examine any other witnesses called by the State. *Id.* § 110-6.1(f)(3). However, section 110-6.1(f)(5) and (f)(6) expressly notes that a detention hearing is distinct from other criminal proceedings. For instance, the Procedure Code states that any traditional bars on the admissibility of evidence are not applicable to detention hearings. *Id.* § 110-6.1(f)(5). Additionally, the defendant is prohibited from moving to suppress evidence or a confession during the hearing. *Id.* § 110-6.1(f)(6). Nevertheless, the defendant may argue that the "proof of the charged crime *may have* been the result of an unlawful search or seizure, or both," and such evidence "is relevant in assessing *the weight of the evidence* against the defendant." (Emphases added.) *Id.*

¶ 59    Defendant is correct that the prior version of the Procedure Code expressly prohibited a court from considering whether evidence underlying the offense was obtained as a result of

unlawful search and seizure. See 725 ILCS 5/110-6.1(c)(1)(B) (West 2014) ("A motion by the defendant to suppress evidence *** shall not be entertained. Evidence that proof may have been obtained as the result of an unlawful search and seizure *** is not relevant to this state of the prosecution."). Thus, the amended Procedure Code clearly shows a legislative preference to allow consideration of such arguments at this stage in the proceedings, albeit not a full-blown motion. However, based on our reading of the new provisions together, even with these amendments, we do not believe that this provision was ultimately meant to be a bar to pretrial detention, at least with regard to the first element of the petition.

¶ 60    First, the location of section 110-6.1(f)(6) within the statute is telling. It is contained within a subsection of the statute that generally describes the procedures for the hearing, and it is not an express factor to consider under any of the petition's requirements upon which the State must meet its burden. Rather, it simply provides that such arguments may be "relevant" in the overall consideration of the petition. Although not raised by defendant, we acknowledge that section 110-5 of the Procedure Code also utilizes the phrase "weight of the evidence against the defendant" (725 ILCS 5/110-5(a)(2) (West 2022)) in considering what conditions of release, if any, are appropriate for release, and as noted prior, section 110-5's statutory factors are incorporated by reference in the catchall provision of section 110-6.1(g)(9) (*id.* § 110-6.1(g)(9)), thus allowing courts to utilize those factors in assessing the defendant's purported dangerousness. However, the ultimate effect of that evidence on the proceeding seems to be firmly addressed by section 110-6.1(f)(5) and (f)(6), which specifically dictates that normal rules of admissibility do not apply to detention proceedings, that suppression orders may not be entered, and that whether evidence has been obtained as a result of unlawful searches or seizures or both are only "relevant" in assessing its weight. See *Reed*, 2023 IL App (1st) 231834, ¶ 21 (the "statute makes clear that [t]he rules

concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing" (internal quotation marks omitted)); see also *Whitaker*, 2024 IL App (1st) 232009, ¶ 55 (recognizing that pretrial detention hearings under the Procedure Code are not "traditional type[s] of evidentiary hearing" and as such the legislature has "permitt[ed] acceptable evidence to include hearsay[ ] and proffers based on reliable information").

¶ 61 Further, under the first element of the petition, the State need only prove that "proof is evident or the presumption great that the defendant has *committed*" the relevant offense. (Emphasis added.) 725 ILCS 5/110-6.1(e)(1) (West 2022). The charge at issue is unlawful possession of a firearm by a felon, and defendant did not deny either during the hearing or on appeal now that he committed the act. Certainly the question of whether the evidence used to bring forth the charge was unlawfully obtained is a *defense* to the charge itself, which the court may consider more fully at a suppression hearing. On that point, a suppression hearing further presents a larger question for review, which requires assessment of witness credibility and evidence beyond what a detainment petition is required to do. See *Flunder*, 2019 IL App (1st) 171635, ¶¶ 20-22. Simply put, the issue before the court in a detention hearing is much narrower, and if the legislature had expressly sought to combine the two procedures, it could have done so. See *Whitaker*, 2024 IL App (1st) 232009, ¶ 55 ("[T]he legislature has recognized that requiring live testimony at [a pretrial detention] hearing would be extremely burdensome."). The plain language of the statute informs us that it did not.

¶ 62 As such, we proceed to the merits of defendant's contention. Defendant argues that the circuit court failed to properly weigh the fact that his charged crime may have been the result of an unlawful search or seizure. Specifically, defendant argues that the initial *Terry* stop was illegal

because the arresting officers did not have reasonable, articulable suspicion that he had committed or was about to commit a crime. In support of this contention, defendant points to the fact that the officers solely conducted the arrest based on the fact that defendant had "widened" his eyes and that he was carrying a "weighted satchel."

¶ 63　Further, defendant continues, even if the officers believed he was armed, his seizure was still illegal. Defendant notes that, per our court's ruling in *Flunder*, 2019 IL App (1st) 171635, in order to conduct a legal pat-down, the officers had to believe that he was both armed and dangerous. Here, defendant contends, the mere fact that he was walking on a sidewalk with a bag could not have risen to the conclusion that he was dangerous, given that there was no evidence of any 911 calls reporting a gun or other relevant threats. As such, defendant reasons, given that evidence of the firearm will "likely be suppressed" in the future, we should find that the circuit court's assessment of the evidence in accordance with this argument was insufficient.

¶ 64　The State responds that the circuit court properly exercised its discretion in rejecting defendant's fourth amendment arguments and finding that the proof was evident and the presumption great that defendant had committed the detainable offense of unlawful possession of a weapon by a felon. The State maintains that its proffer met its burden based on the officers' reasonable belief that he likely had a firearm in his possession, which was supported by the (1) officers' observations that defendant had been carrying a "sagging satchel" that appeared to contain a heavy object; (2) that when police officers attempted to speak with him, his eyes "widened" and he reacted with "furtive movements" to conceal the bag and its contents; (3) his repeated statements that he did not consent to a search; and (4) his attempts to walk away from the officers. Although the State concedes that the officers likely did not observe the gun at the outset of the interaction, it maintains that this would merely go to the weight of the evidence.

¶ 65    Notably, the State appears to characterize this interaction as a "brief *Terry* stop," which it did not do during the hearing before the circuit court. The State further acknowledges that "reasonable minds may disagree regarding the weight assigned to the evidence," but nevertheless, the record undercuts any question as to whether the court properly considered defendant's fourth amendment argument, wherein the court expressly noted that defense counsel had "made some excellent points" regarding those issues. As such, the State concludes, the record demonstrates that the State met its burden based on the totality of the evidence presented in showing that defendant had committed a detainable offense, which was not an arbitrary determination by the court.

¶ 66    There is no dispute that defendant's unlawful possession of a weapon by a felon is a detainable offense under the Procedure Code. See 725 ILCS 5/110-6.1(a)(6)(O)(i) (West 2022). With regard to the unlawful search and seizure argument, although not dispositive, we mention, merely in passing, the constitutional underpinnings of defendant's argument. Both the fourth amendment to the United States Constitution and the Illinois Constitution protect citizens from unreasonable searches and seizures by police officers. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; *People v. Holmes*, 2017 IL 120407, ¶¶ 24-25. Encounters between police officers and citizens are often characterized into three tiers: (1) arrests that are supported by probable cause; (2) brief investigative detentions commonly known as "*Terry*" stops, which must be supported by a police officer's reasonable, articulable suspicion of criminal activity; and (3) consensual encounters that are not coercive in nature and therefore fall outside the scope of the fourth amendment. *Flunder*, 2019 IL App (1st) 171635, ¶ 25.

¶ 67    We first reiterate that defendant's pretrial detention hearing was held one day after his arrest and that the State did not call any of the police officers as witnesses, which was expressly noted by the court in its ruling. Further, as provided in the Procedure Code, the court is not

authorized to enter a suppression order at this stage in the proceedings, thus prohibiting it from expressing any opinion as to the existence of reasonable, articulable suspicion. See 725 ILCS 5/110-6.1(f)(6) (West 2022). Finally, the Procedure Code prohibits, and defendant did not make, a motion for suppression; instead, he only urged overall consideration of the nature and circumstances of the arrest. Although we do not express any opinion as to the merits of a future suppression motion on a more developed record, it is clear from the report of proceedings that the circuit court considered defendant's fourth amendment argument, which it credited favorably throughout the duration of the hearing, as well as the fact that he had not yet heard the arresting officers' testimony and defendant had not yet had a chance to cross-examine them.

¶ 68    However, the court also balanced these considerations against the State's proffer and ultimately determined that the State had met its burden on the first element. Specifically, the court pointed to the nature and circumstances of the arrest per the police officers' assessment of the scene. Although not noted by the circuit court, the police officers' arrest report indicated that the two had experience with "multiple UUW arrests" and that, based on defendant's behavior, they believed he was carrying a firearm. Such behavior, however, was specifically mentioned by the circuit court in its ruling, in which the court referenced defendant's attempt to conceal the satchel upon what the State interpreted as defendant's recognition of who the police officers were, his attempts to leave the scene, and his repeated statements that he did not consent to a search. Further, as noted by the court, at the end of the day, defendant was ultimately found in possession of a weapon, which he was not allowed to do based on his status as a felon.

¶ 69    As noted by the State, reasonable minds could differ on the impact of defendant's fourth amendment argument on the evidence proffered by the State. However, at this stage in the proceedings, we cannot say that an opposite conclusion is clearly apparent. As the fourth

amendment argument is only "relevant" to the court's overall assessment of the evidence, a disagreement about the evidence's significance does not automatically render the court's decision unreasonable. Further, the court's oral ruling indicates that its ruling was not arbitrary, as it clearly considered defendant's argument in its overall assessment of the petition. Finally, we must reiterate the narrow purpose and scope of the detention hearing, which does not preclude the later filing of a motion to suppress. As such, we affirm the court's finding as to the first element of the petition that the State had met its burden in establishing that defendant had committed the charged offense.

¶ 70                                  E. Real and Present Threat

¶ 71     Next, defendant argues that the State also failed to meet its burden of proving that he posed a real and present threat to the safety of any person, persons, or the community based on the specific and articulable facts of his case. Defendant contends that the mere fact that he was in possession of a firearm does not equate to the notion that he was a threat to the community, especially as there were no allegations or evidence of him actually using the weapon. Defendant also points to the fact that he received a low pretrial services assessment score as further indication that he does not pose a threat. Notably, however, defendant does not challenge any of the court's findings as to his criminal background, and as we stated prior, the record does not contain any documentation to that effect.

¶ 72     The State responds that the circuit court did not err in finding that defendant posed a real and present threat. The State first rejects defendant's argument that it solely relied on his criminal history to argue that he was a threat to the safety of others. Indeed, the State points out, the evidence showed that defendant posed a significant risk to the public in that he had been carrying a loaded, extended clip semiautomatic weapon on his person with a live round of ammunition in the chamber. Notwithstanding that the loaded gun was a danger by itself, the State further points out

that the gun was not secured and could have easily and accidentally discharged, as the record demonstrated that it freely fell from the bag to the sidewalk during the events leading to defendant's arrest.

¶ 73    The State also rejects defendant's argument that the mere possession of a firearm did not make him a threat. The State points out that defendant had four prior felonies, including convictions for violent crimes and an illegal possession of a firearm conviction, thus making him a repeat offender for his current charge. Thus, the State reasons, the circuit court properly found, based on the totality of the information presented, that defendant posed such a threat.

¶ 74    We turn to the record. The court's combined oral and written rulings that defendant posed a real and present threat were based on a variety of factors. First, the court considered the nature of the offense, which involved the unlawful possession of a weapon. See *id.* § 110-6.1(g)(1). The court agreed with defendant that a "firearm by itself was not dangerous." See *id.* § 110-6.1(g)(3) (assessing whether there were any identifiable persons to whom the defendant possibly posed a threat). However, the court stated in both its oral and written ruling that this particular firearm had an extended magazine that was loaded. Further, the court also noted during the hearing that defendant was barred from possessing the weapon to begin with, as he did not have a FOID card or CCL, which was likely affected by the fact that he was a convicted felon, as noted in the written detention order. See *id.* § 110-6.1(g)(7) (assessing whether the defendant was known to possess or have access to weapons).

¶ 75    Additionally, the court considered defendant's history and characteristics. See *id.* § 110-6.1(g)(2). The court expressly acknowledged defendant's age of 26 years (see *id.* § 110-6.1(g)(5)); however, the court weighed that consideration against defendant's criminal background, pointing out that defendant had already been convicted for "four felonies" and one recently for a weapons

charge, as well as separate convictions for other crimes of violence, which were robbery and battery. See *id.* § 110-6.1(g)(2)(A) (considering whether defendant's prior criminal history showed evidence of violent, abusive, or assaultive behavior). Although we observe that there is no documentary evidence in the record confirming these convictions, defendant does not deny and, indeed, actually does not even address any parts of his criminal history in his memorandum.

¶ 76 Further, when discussing whether there were conditions or a combination of conditions that would otherwise mitigate his risk, the court stated that it had considered the pretrial scores of "4" out of "6" for "new criminal activity" and "2" out of "6" for "failure to appear," pretrial services' ultimate recommendation of level one supervision, defendant's fourth amendment arguments, and his age and full-time employment. See *id.* § 110-6.1(g)(9) (allowing courts to consider factors outlined in section 110-5 in determining dangerousness); *id.* § 110-5(a)(2) (assessing the weight of the evidence against the defendant); *id.* § 110-5(a)(3)(A) (assessing defendant's employment and financial resources). We note that defendant does not challenge the findings on conditions, particularly with regard to the level 1 supervision recommendation. Even so, the record reflects that these considerations were weighed against the fact that defendant showed a propensity for noncompliance with court orders and other government entities based on his conviction for escape of electronic monitoring, his unsatisfactory termination of probation, and that his most recent felony conviction had also been for unlawful possession of a weapon by a felon. See *id.* § 110-6.1(g)(2) (assessing the history and characteristics of the defendant in relation to prior criminal history); *id.* § 110-5(a)(5) (evaluating the nature and seriousness of obstructing or attempting to obstruct the criminal justice process if defendant were released); *id.* § 110-

5(a)(3)(A) (assessing defendant's criminal history and record concerning appearances at court proceedings).[14]

¶ 77    Thus, based on our careful review of the court's oral and written rulings, we cannot agree with defendant that the circuit court did not carefully and thoroughly evaluate the State's petition based on the proffer it had at the time of the hearing. The court's concern seemed to ultimately lie with defendant's extensive criminal history, in addition to the fact that he had already acquired one prior and prohibitive conviction for the same charge that brought him back to court. As such, we do not find that the circuit court's determination that defendant posed a threat to the safety of any person or the community was unreasonable in light of the circumstances.

¶ 78    In sum, we ultimately conclude that the circuit court did not err in granting the State's petition for defendant's detainment prior to trial, and as such we affirm the order in its entirety.

¶ 79                                    III. CONCLUSION

¶ 80    For the reasons stated, we affirm the judgment of the circuit court.

¶ 81    Affirmed.

¶ 82    Ellis, J., specially concurring.

¶ 83    For the reasons given in my special concurrences in *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 79 (Ellis, J., specially concurring), and *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 65 (Ellis, J., concurring), I would employ a standard of review of *de novo* to the factual findings. I otherwise concur in the judgment.

---

[14]We are mindful, however, that the Procedure Code cautions our focus on this factor. See 725 ILCS 5/110-1(f) (West 2022) (isolated instances of nonappearance in court alone are not necessarily evidence of a willful flight risk, but can be considered factors in assessing any future attempts to evade prosecution).

*People v. Parker*, 2024 IL App (1st) 232164

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-MC-1112731; the Hon. William N. Fahy, Judge, presiding. |
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Tai Martin, Assistant Public Defender, of counsel), for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Zachary M. Slavens, Assistant State's Attorney, of counsel), for the People. |