2024 IL App (1st) 240382-U

No. 1-24-0382B

Order filed April 25, 2024

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 24500037701 |
| | ) | |
| GUSTAVO ALVAREZ-HERNANDEZ, | ) | Honorable |
| | ) | Linzey Jones, |
| Defendant-Appellant. | ) | Judge Presiding |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. State proved by clear and convincing evidence that defendant committed detainable offense; that defendant was threat to specific individuals and community; and that no set of conditions could mitigate threat.

¶ 2    Defendant Gustavo Alvarez-Hernandez was charged with predatory criminal sexual assault and aggravated criminal sexual abuse. On February 8, 2024, the trial court ordered defendant detained. Defendant appeals that ruling under Illinois Supreme Court Rule 604(h) (eff. April 15, 2024). Finding no error in the court's ruling, we affirm.

¶ 3    Defendant was charged by felony complaint with predatory criminal sexual assault and aggravated criminal sexual assault. See 720 ILCS 5/11-1.40(a)(1) (West 2022); *id*. § 11-

1.60(c)(1)(i)). The State petitioned for pretrial detention, claiming both that defendant was a threat to the safety of certain individuals and the community, and that he posed a high risk of willful flight to avoid prosecution.

¶ 4    There is no dispute that defendant is charged with detainable offenses. Defendant, age 32, has no publishable background. On the pretrial services public safety assessment, defendant ranked a three out of six on the scale for new criminal activity and a four out of six on the scale for failure to appear. The assessment recommended maximum conditions if defendant were released.

¶ 5    The State proffered the following facts. All quotations are from the proffering attorney.

¶ 6    The victim is defendant's 11-year-old stepdaughter. On November 11, 2023, the victim's grandmother noticed "hickeys" on the victim's neck and asked the victim about them. The victim "broke down" and told her grandmother that defendant had been sexually assaulting and abusing her "one to two times per week since Halloween of 2022," which was approximately one week after her mother had married him.

¶ 7    The most recent incident occurred on November 9, 2023. The victim disclosed that acts of sexual penetration (penis to vagina) occurred regularly, and that defendant also would digitally penetrate her vagina. On one occasion when the victim tried to resist defendant's advances, defendant "threw the victim across the room."

¶ 8    In November 2023, the victim submitted to a forensic interview in which the victim stated that "on multiple occasions *** the defendant touched the victim's vagina with the defendant's penis, would put his penis inside of her vagina and would lick and suck the victim's body including her bare neck and breasts." The victim told the interviewer that the abuse would occur in defendant's bedroom after school, and defendant would "put headphones on her and

turn the music up or give her a phone or computer to play with while he put his penis in her vagina then give her candy and tell her to shower."

¶ 9    The victim's 9-year-old brother was interviewed and told the interviewer that the victim would go into defendant's bedroom after school. He stated that the door was locked most of the time, but he saw the victim and defendant in bed together on one occasion.

¶ 10    On February 7, 2024, defendant told police that "the victim came into his bedroom and began to tickle him" and that he "tickled the victim back and then began kissing the victim's neck causing marks and [he] had an erection while he was doing this." Defendant told the police "multiple times" that "he couldn't control himself."

¶ 11    The State further proffered that, according to the victim's family, defendant is undocumented, not a U.S. citizen, with family in Mexico. According to the proffer, "[the] victim's family has learned that the defendant has plans to flee to Mexico if he is going to be put in jail."

¶ 12    Defendant denied the allegations and denied having plans to flee the jurisdiction. He noted that he has lived in the United States since age five and has extensive family in Chicago. Defendant has been staying with his mother since the investigation began and has not had contact with the victim. Defendant was previously employed as a janitor cleaning banks; he is a high school graduate; and he has no criminal history.

¶ 13    The court found clear and convincing evidence that the proof was evident and the presumption great that defendant committed a detainable offense based on the forensic interview, which was corroborated by the victim's grandmother and brother. The court found that the State proved by clear and convincing evidence that defendant poses a real and present threat to the victim, her grandmother, her brother, and "young females in general" based on "a year's long

abuse of the victim." The court found clear and convincing evidence that neither electronic monitoring nor home confinement would protect the victim or family members from the threat posed by defendant.

¶ 14    The court also ruled that the State sufficiently proved that defendant was a flight risk and that no set of release conditions could mitigate that risk, as defendant is not a United States citizen, and the State had proffered evidence of a plan to flee to Mexico.

¶ 15    This appeal followed.

¶ 16    Defendants are presumed eligible for pretrial release. 725 ILCS 5/110-2(a) (West 2022); *id.* § 110-6.1(e). The State may detain an accused only if it establishes that the charged offense is eligible for detention and proves that (1) the proof is evident or the presumption great that the defendant committed that detention-eligible offense; (2) the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or the defendant poses a threat of willful flight; and (3) no condition or combination of conditions can mitigate that real and present threat or flight risk. *Id.* § 110-6.1(e).

¶ 17    The State must prove each of these three facts by clear and convincing evidence. *Id.* Clear and convincing evidence is "that quantum of proof that leaves no reasonable doubt in the mind of the factfinder about the truth of the proposition in question." *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12. If the State fails to carry its burden on any of these three facts, the presumption of release remains, and detention is unlawful. 725 ILCS 5/110-6.1(e) (West 2022).

¶ 18    Our standard of review is unsettled. The author of this opinion is of the belief that detention orders should be subject to independent *de novo* review, with findings of historical fact reviewed for manifest error. See *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 80 (Ellis, J., specially concurring); *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 67 (Ellis, J., specially

concurring). The other panel justices believe that the first two factual findings—those of proof-evident and dangerousness or flight risk—should be reviewed for manifest error, while the third factual finding regarding conditions should be reviewed for an abuse of discretion. See *Saucedo*, 2024 IL App (1st) 232020, ¶¶ 31-36 (majority opinion); *People v. Parker*, 2024 IL App (1st) 232164, ¶¶ 44-50.

¶ 19    We need not resolve the standard of review here, however, as our decision would be the same under any standard of review.

¶ 20    Defendant does not deny that he is charged with detainable offenses. Nor does he deny that the proof was evident or the presumption great that he committed those offenses. His argument is that "[t]he State failed to show that [defendant] poses a real and present threat to the safety of any person or persons in the community that cannot be mitigated by conditions of release." In the State's view, that argument is *not* a denial that defendant is "dangerous," shorthand for being a threat to specific individuals or the community. Rather, defendant is arguing that he is not *such* a threat that pretrial conditions could not mitigate it. Said differently, defendant is limited his argument to prong (3)—the "conditions" prong.

¶ 21    We agree with the State. For one, defendant did not signify in any way in his notice of appeal, either by checking a box or inserting a handwritten or typed argument, that he was challenging the finding that he was a threat to an individual or the community. (Note that this was the more detailed notice of appeal applicable before April 15, 2024, when Rule 604(h) was amended.) Even on appeal, defendant makes no effort to deny the threat but focuses instead only on the release conditions available to mitigate it.

¶ 22    The "threat" a defendant poses to an individual or the community is not an either/or proposition so much as a spectrum. A defendant charged with certain offenses might be deemed

to pose *some* level of threat, but not so much that release conditions could not mitigate it. Other defendants might be deemed to pose such a great threat that no set of conditions could provide sufficient mitigation. These two prongs of the detention question play off one another in this way; it is impossible to consider the question of sufficient conditions of release without comparing it to the level and scope of threat a defendant poses either to individuals or the community. So regardless of whether it is a specific point of error on appeal, it is worth first discussing the level of threat defendant poses.

¶ 23    The evidence, as proffered, shows that defendant repeatedly and serially assaulted his stepdaughter over the course of slightly more than a year. The victim said as much to her grandmother and in a forensic interview. The grandmother witnessed a physical manifestation of the abuse in the form of "hickeys" on the victim's neck. The victim's brother corroborated the victim's testimony. And defendant admitted his crime to the police.

¶ 24    While the victim is currently in an undisclosed location, defendant admitted to police that he could not control himself when it came to abusing his stepdaughter. Defendant remains a member of the victim's family. He is absolutely a threat to the safety of the victim. He is likewise a threat to the safety of the other witnesses—also his family members.

¶ 25    The State also sufficiently proved that defendant is a threat to the community—namely, other young girls. Though his underage victim had been conveniently available to him over the course of a year, living under the same roof, the State rightly feared that defendant might seek out another victim in her stead. Unlike such crimes as murder—which tend to be situational, fact-specific, one-off events—sexual abuse is far more prone to recidivism, often the product of a mental disorder. See, *e.g.*, *Kansas v. Crane*, 534 U.S. 407, 411-12 (2002); *In re Commitment of Fields*, 2014 IL 115542, ¶ 22. It is for this very reason that Illinois has passed statutes permitting

the post-incarceration, civil commitment of child sex abusers on the fear of recidivism. See, *e.g.*, 725 ILCS 207/1 *et seq.* (West 2022) (Sexually Violent Persons Commitment Act).

¶ 26    The court found that pretrial conditions would not mitigate the risk that defendant posed to these specific individuals or to the community. The court reasoned as follows:

"If the Court were to impose Sheriff's [electronic monitoring], the Defendant would still have movement at least 8 hours a day, 2 days a week. And even if the Court restricted movement to 24 hours, he could not move around at all for 24 hours, he's at a house. He is not being monitored. He could walk out the door with or without the equipment on his ankle and do whatever he wants to do which could include harming the people the Court has already referenced. The same thing with GPS. GPS is not sufficient nor is home confinement through pretrial. Again, while those conditions are monitored, there is no one there to provide 24-hour supervision over the Defendant and that is what is necessary here."

¶ 27    We concur entirely with the trial court's assessment. The threat defendant poses is such that even a momentary breach of conditions could lead to harm. Indeed, defendant could theoretically harm a child from within the confines of his home without any breach of condition whatsoever. The trial court's reasoning was thorough and sound. We uphold it.

¶ 28    Given our conclusion, we need not reach the question of the risk of defendant's willful flight from prosecution. And we emphasize that the allegations before us are just that— allegations. Nothing we have said here alters the State's burden of proving each and every element of these offenses beyond a reasonable doubt at trial.

¶ 29    The judgment of the circuit court is affirmed.

¶ 30    Affirmed.