2024 IL App (1st) 240720-U

No. 1-24-0720B

Second Division
August 9, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 241101735 |
| DARRIUS HAYDEN | ) ) | Honorable Charles Beach |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court's order denying defendant's pretrial release is affirmed.

¶ 2    Defendant Darrius Hayden appeals from an order of the circuit court denying him pretrial release under article 110 of the Code of Criminal Procedure of 1963 (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. In particular, defendant contends that the State failed to carry its burden of

proving by clear and convincing evidence that (1) the proof is evident or the presumption great that he committed the charged offense; (2) he poses a real and present threat to the safety of any person or the community, based on specific, articulable facts of the case; and (3) no condition or combination of conditions on his pretrial release could mitigate this threat. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On March 14, 2024, defendant was arrested and charged with the unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)). The State filed a petition for pretrial detention on March 15, 2024, citing that defendant posed a real and present threat to the safety of any person or the community.

¶ 5      The case proceeded to a detention hearing, where the State gave the following proffer. Just after 4 p.m. on March 14, 2024, an unidentified person called 9-1-1 and reported that someone had pointed a gun at him in the parking lot of a Jewel-Osco grocery store. The caller described the suspect as a black man with dreadlocks who was dressed in all black with a gun on his hip.

¶ 6      As responding officers headed toward the Jewel-Osco, they were informed by other officers that a POD camera showed someone matching the suspect's description "less than a block away" from the store. The responding officers made contact with defendant at that location and discovered that he had a loaded Glock handgun tucked into his waistband on his right hip. Defendant admitted to the officers that he did not have a Firearm Owners Identification Card or a concealed carry license.

¶ 7      The State further proffered that defendant had previous felon convictions for attempted residential burglary and aggravated unlawful use of weapon. Defendant also had a pending charge of unlawful use of a weapon by a felon, for which he was on pretrial release at the time he was

arrested in this matter. The State further proffered that defendant was on federal probation for "transporting firearms" at the time of his arrest, though the defense maintained that the probation was successfully completed and terminated early in January 2024.

¶ 8    For its part, the defense presented a different version of the events leading to defendant's arrest. According to defense counsel, defendant was working at the Jewel-Osco, where he was employed as a manager in the meat department, when he discovered the gun in the bathroom. He took the gun and was walking to "safely surrender that weapon at the police station" when he was stopped by police. He denied pointing the gun at anyone, and noted that the only evidence to the contrary was the word of the anonymous 9-1-1 caller.

¶ 9    Defense counsel further argued that, regardless of how he came into possession of the gun, defendant did not pose a danger to the community because he had a nonviolent background, was gainfully employed, and was in a stable relationship with his girlfriend, who was present in court to support him. Counsel also argued that defendant had shown he could comply with conditions on release because he had successfully completed his federal probation and had only one failure to appear, which was in a misdemeanor case from 2012.

¶ 10    After hearing from the parties, the circuit court granted the State's petition for pretrial detention. In so ruling, the court opined that the proof was evident that defendant committed the charged offense because the police discovered a gun on his person and there was no dispute that he had previous felony convictions.

¶ 11    As to whether defendant posed a danger to the community, the court acknowledged that defendant's criminal history was "primarily nonviolent," but also noted that defendant had multiple cases involving firearms. The court stated that "it begs the question why does an individual who knows they cannot carry a weapon continue to carry a weapon. And the only reason

I could think of when it's time and time again is some nefarious purpose, which is a violent act of some kind." The court also considered that defendant was alleged to have pointed the gun at the 9-1-1- caller. Based on these circumstances, the court found that defendant posed a real and present threat to the safety of the community.

¶ 12    Finally, the court found that no condition or combination of conditions on release would mitigate that threat. The court explained that defendant "may or may not be on federal probation," but, in any event, he had already violated his pretrial release for a pending gun case by being arrested for this matter. Ultimately, the court stated that "any form of pretrial release, whether it be [electronic monitoring] or curfew or any of those things" would not "stop [defendant] from continuing to violate the law." Accordingly, the court ordered defendant be detained.

¶ 13    This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15    Under recent amendments to the Code of Criminal Procedure, all defendants are presumed eligible for and entitled to pretrial release. 725 ILCS 5/110-2(a) (West 2022). However, that presumption can be overcome, and a defendant may be denied pretrial release, upon the State's petition in certain circumstances. Where the State files a petition to deny pretrial release based on the defendant's alleged dangerousness, the State must prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person or the community, based on specific and articulable facts of the case; and (3) that no condition or combination of release conditions can mitigate that threat. *Id.* § 110-6.1(e)(1-3). Clear and convincing evidence is the " 'quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question.' " *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12. It is

considered more than a preponderance of the evidence, but less than is required to convict a defendant of a criminal offense. *Id.*

¶ 16    The applicable standard of review for pretrial release orders remains unsettled by our supreme court. The topic has been the subject of considerable debate among the districts of the appellate court, as well as different divisions of the First District. *People v. Lee*, 2024 IL App (1st) 232137, ¶ 21. Some appellate decisions have reviewed all aspects of pretrial detention hearings for an abuse of the circuit court's discretion (see, *e.g.*, *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18), while others have used a manifest weight of the evidence standard (see, *e.g.*, *People v. Stock*, 2023 IL App (1st) 231753, ¶ 27). Still others have adopted a mixed approach where (1) whether the defendant committed a detainable offense or posed a real and present danger are reviewed against the manifest weight of the evidence, but (2) the court's ultimate decision on whether to detain the defendant is subject to abuse of discretion review. See, *e.g.*, *People v. Parker*, 2024 IL App (1st) 232164, ¶¶ 48-50. In addition, one justice has advocated for a *de novo* standard, at least where the circuit court hears no live testimony and relies solely on documentary evidence. *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 122 (Ellis, J., specially concurring). However, it is unnecessary to resolve the standard of review for this case, as we would reach the same decision under any standard.

¶ 17    Turning to the merits, defendant first argues that the State did not show that the proof was evident or the presumption great that he committed the charged offense. In particular, defendant notes that the only evidence that he pointed the gun at someone came from the anonymous 9-1-1 caller, and the caller's claim was not corroborated by any other witnesses or video evidence. Defendant also notes that the caller gave only a general description of the suspect as a black man with dreadlocks dressed in all black. Finally, defendant denies pointing the gun at anyone and has

supplied his own explanation as to why he had the gun, an account he says is "supported by the fact that he is employed at that Jewel Osco location."

¶ 18     However, as the State points out, whether defendant pointed the gun at someone in the Jewel-Osco parking lot or whether he was merely on his way to turn it in at the police station is largely irrelevant to whether he committed the offense of the unlawful use of weapon by a felon. Under any version of events, defendant's conduct satisfied the basic elements of the offense, *i.e*, that he was (1) a felon and (2) in possession of a firearm. See 720 ILCS 5/24-1.1(a) (West 2022). Notably, the offense does not require the defendant to brandish a gun or point it at another person. *Id.* Thus, while defendant may or may not have an available defense at trial, the circuit court did not err in determining that the proof was evident or the presumption great that defendant committed the charged offense.

¶ 19     Defendant also argues that the State did not prove he posed a real and present threat to a specific person or the community. For support, he emphasizes his "nonviolent background" and "mid-level" scores on his pretrial services assessment. He also asserts that he is "very optimistic" about the resolution of his pending case for unlawful use of a weapon by a felon.

¶ 20     For the dangerousness element, the exact nature of defendant's offense becomes more important. As discussed, the parties agree that defendant is a felon who was found in possession of a firearm approximately one block away from where an anonymous 9-1-1 caller reported that someone matching defendant's description pointed a gun at him. Although defendant denies pointing a gun at anyone, the circuit court was not required to accept his version of events. Regardless of the level of deference owed to the circuit court's factual findings, we agree with the circuit court that defendant's account is "a bit absurd." It seems highly unlikely that defendant would take it upon himself to return a lost firearm to the police station when he could not legally

possess a firearm, was on pretrial release for a pending firearms case, and was either on or had just completed probation in a third firearms case. The much more natural explanation of the facts is that defendant pointed the gun at the 9-1-1 caller and was quickly discovered in the area with the gun on his hip. From these facts, and defendant's history of illegally possessing firearms, we agree with the circuit court's finding that defendant presented a real and present danger to the community.

¶ 21    Finally, defendant argues that the State failed to prove that no condition or combination of release conditions would be sufficient to mitigate any danger he posed to the community. Defendant contends that he has demonstrated an ability to comply with release conditions by successfully completing his federal probation. He also asserts that he only has one failure to appear, which was from 2012, and that the State did not establish why he could not be placed on electronic monitoring.

¶ 22    We disagree. As the circuit court explained, regardless of the status of his federal probation, defendant's unlikeliness to abide by release conditions is demonstrated by the fact that he was already on pretrial release for a pending firearms case at the time of his arrest in this matter. None of the arguments raised by defendant overcome this point. Thus, we cannot say that the circuit court erred in finding no condition or combination of release conditions would be sufficient.

¶ 23                                  III. CONCLUSION

¶ 24    For these reasons, the judgment of the circuit court is affirmed.

¶ 25    Affirmed.