NOTICE
Decision filed 06/11/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250175-U

NO. 5-25-0175

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 24-CF-52 |
| | ) | |
| ADONIS L. SHEPARD, | ) | Honorable |
| | ) | Timothy D. Berkley, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice McHaney and Justice Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are affirmed.

¶ 2    The defendant, Adonis L. Shepard, appeals the March 5, 2025, denial of his motion for relief and the January 11, 2024, order of the circuit court of Madison County that granted the State's petition to deny him pretrial release. For the following reasons, we affirm.

¶ 3                          I. BACKGROUND

¶ 4    On January 8, 2024, the defendant was charged by information with four counts. That same day, the State filed a verified petition to deny the defendant pretrial release based upon the defendant being charged with a qualifying offense and that the defendant would pose a real and present threat to the physical safety of any person or persons of the community. A warrant for the

1

defendant's arrest was issued. On January 9, 2024, the defendant was arrested and made an initial appearance before the circuit court. During this proceeding, the defendant was informed of the State's petition and a hearing on the matter was scheduled for January 11, 2024.

¶ 5    On January 10, 2024, the State filed a motion for leave to file an amended information, which the circuit court granted. The State subsequently filed an amended information alleging six counts. Count I alleged that on January 5, 2024, the defendant committed the offense of unlawful use of weapons, in that he knowingly possessed on his person, a machine gun, a Glock 26 9-millimeter (mm) handgun, modified with an auto sear to make the weapon automatically fire more than one shot without manually reloading by a single function of the trigger. Count II alleged that on January 5, 2024, the defendant committed the offense of armed violence, in that while armed with a dangerous weapon, a Glock 26 9mm handgun, the defendant possessed methamphetamine with the intent to deliver. Count III alleged that on January 5, 2024, the defendant committed the offense of unlawful delivery or possession with the intent to deliver methamphetamine or a substance containing methamphetamine, in that he knowingly possessed with the intent to deliver 15 or more grams but less than 100 grams of a substance containing methamphetamine. Count IV alleged that on January 5, 2024, the defendant committed the offense of unlawful possession of a stolen firearm, in that he, a person not entitled to the possession of a firearm, possessed a firearm, a Glock 26 9mm handgun, knowing it to have been stolen. Count V alleged that on January 5, 2024, the defendant committed the offense of unlawful possession of weapons by a felon, in that he knowingly possessed a firearm, a Glock 26 9mm handgun, and had been previously convicted of a felony offense, unlawful possession of a stolen firearm, in Madison County, Illinois, cause No. 21-CF-3. Count VI alleged that on January 5, 2024, the defendant committed the offense of aggravated fleeing or attempting to elude a peace officer, in that he knowingly failed to obey and

attempted to flee and elude a police officer after the officer had given the defendant a visual or audible signal to stop the vehicle driven by the defendant, and the defendant's flight or attempt to elude was at a rate of speed of at least 21 miles over the legal speed limit.

¶ 6    On January 11, 2024, the circuit court held a hearing on the State's petition. During the hearing, the State proffered evidence of the charged offenses and submitted five photograph exhibits to support its petition. The State indicated that Granite City police officers attempted to conduct a lawful traffic stop of the defendant's vehicle, a white Nissan, during which the defendant fled from officers, leading them on a pursuit as he attempted to drive towards the city of Madison, Illinois. The pursuit reached speeds of 85 miles per hour in a 35-mile-per-hour residential zone. The white Nissan became disabled after losing control on a set of railroad tracks. The defendant and a passenger then exited the vehicle and fled on foot. Officers were able to apprehend the passenger near the location where he and the defendant fled from the vehicle. The passenger, Demontre Fair, was armed with a "rifle" at the time of his arrest. Officers reported seeing the defendant with a firearm in his possession during his flight. A K-9 unit was deployed, and the defendant was later apprehended. A Glock 9mm handgun was discovered along his flight path. The State highlighted that the handgun was modified to be fully automatic. After apprehending the defendant, the State indicated that officers searched the Nissan and discovered 9mm ammunition as well as 26.1 grams of a substance that field-tested positive for methamphetamine. The State argued that, based on this evidence, there is a strong presumption that the defendant committed the charged offenses. In addition, the State argued that the defendant had a prior felony conviction for possession of a stolen firearm and was sentenced to the Illinois Department of Corrections (IDOC). Based on the above, including the defendant's flight, the State argued that he

3

poses an ongoing threat to the community. The State maintained that no conditions or combination of conditions could adequately mitigate this risk.

¶ 7    Defense counsel proffered a video recording of the chase that led to the defendant's arrest. Defense counsel emphasized that the State has the burden to show that the proof is evident and the presumption is great that the defendant committed the offenses charged. Defense counsel noted that the police radios specified they were searching for a black male in a white hoodie, arguing the possibility of a third person in the car since the defendant was not wearing a white hoodie. Further, defense counsel argued that the officers could not have known what the defendant had in his hands or on his person, meaning that they had no reasonable basis to assume he was carrying a firearm. In addition, counsel mentioned that a K-9 unit was used to locate the defendant. Counsel contended that it was reasonable to assume that the K-9 unit correctly followed the defendant's actual flight path. Following the defendant's flight path, counsel argued that the K-9 unit did not find a firearm. Rather, the firearm discovered was found by another officer who was canvassing the area. Defense counsel contended that even if the defendant had a firearm on his person, he did not attempt to cause reasonable apprehension in the officers nor attempt to threaten them, as the video shows the defendant was not running towards the patrol car but rather trying to avoid being hit by it.

¶ 8    Defense counsel informed the court that it should take note that there is no allegation that the defendant fired a firearm, pointed a firearm, or threatened any individual in any way when assessing dangerousness. Additionally, counsel informed the court that the defendant, who was 21 years old, was suffering from a dog bite on his leg that required daily medical attention. He lived with his mother and two younger sisters in East Saint Louis, while his father resides in Saint Louis. Counsel highlighted the defendant's criminal history, noting that he had two separate cases in Madison County and had never missed a court date. Additionally, counsel emphasized that the

4

defendant's criminal history does not reflect any violent or abusive behavior. Further, counsel indicated that the defendant was not under any bond condition. Defense counsel mentioned that, although not necessary, the defendant would be willing to agree to electronic monitoring.

¶ 9    In response, the State argued that the video proffered by defense counsel clearly showed that the defendant's vehicle was fleeing from officers at a high rate of speed, thereby putting the public at risk during the pursuit. The State noted, again, that the defendant's vehicle eventually came to a stop only because it was disabled by railroad tracks. Additionally, the State argued that the video showed the defendant and his passenger fled on foot. Further, the State highlighted that the defendant had a prior conviction for possession of a stolen firearm, for which he had received a three-year sentence in the IDOC. The State then pointed out that the defendant faces Class X felony charges in this case, involving both stolen firearms and modified firearms. For this reason, the State argued that the defendant posed an ongoing risk of harm to the community at large.

¶ 10    Having considered the information, including the proffer from both parties, as well as the video and photographic evidence, the circuit court found, by clear and convincing evidence, that the defendant committed the charged offenses. Further, considering the defendant's prior criminal history, the circuit court determined that the defendant posed a real and present threat to the safety of others in the community and that there are no conditions or combination of conditions that could mitigate the real and present safety threat, as the defendant demonstrated a disregard for the law. That same day, the circuit court entered an order granting the State's petition.

¶ 11    On September 19, 2024, the defendant filed a motion for hearing on detention. In the motion, the defendant requested immediate release. In support, the motion stated:

"1. The defendant is charged with one count of Unlawful Use of Weapons, one count of Unlawful Possession of a Stolen Firearm, one count of Unlawful Possession of

5

Weapons by a Felon and one count of Aggravated Fleeing or Attempting to Elude a Police Officer.

2. The defendant is detained in the Madison County Jail.

3. Effective September 18, 2023, the Illinois SafeT Act abolished cash bond in the state of Illinois, and there is a presumption of pretrial release. [Citation.]

4. The defendant does not pose a real and present threat to the safety of any person or persons in the community.

5. The defendant does not pose a real and present threat of willful flight."

¶ 12    On October 18, 2024, the circuit court held a hearing regarding the defendant's motion. Defense counsel began by arguing that the State had not met its burden under the statute. He suggested that it was important to examine whether the standards for continued detention were met, "starting with the first prong." The following colloquy then occurred:

"THE COURT: Wait. Let me stop you. You and I have been down this road before.

[DEFENSE COUNSEL]: I understand, Your Honor.

THE COURT: And we indicated that first prong you're referring to have [sic] already been determined. They were determined at the last detention hearing. Only thing I'm concerned about is what conditions exist now that would satisfy the statutory requirements and still protect the public. So that's what I want you to focus on.

[DEFENSE COUNSEL]: I understand your Honor. The reason I bring it up, I think a full understanding of what the facts are will lead the court to understand a review of whether or not Mr. Shepard needs to be detained. And if—if the Court understands a few facts, the court will have a fuller understanding.

6

THE COURT: That's fine. You can do that."

¶ 13    Defense counsel reiterated most of his argument from the initial detention hearing. Additionally, he stated that the defendant lacks any psychological or psychotic history and does not own or possess any weapons. Counsel also informed the circuit court that the defendant turned 22 while detained in the Madison County jail, during which the defendant has complained about chest and rib pain, joint pain in his knees and lower back, and headaches. Defense counsel indicated that if the court were to release the defendant, he planned to consult a doctor about these complaints. The circuit court then asked:

"THE COURT: Okay. For the previous judge who entered the detention order to detain Mr. Shepard, that judge made a finding that there was clear and convincing evidence of the offenses that are charged, right?

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: And that includes possessing [*sic*] of a weapon?

[DEFENSE COUNSEL]: Correct."

Later, the court inquired about the location of the firearm. Defense counsel explained:

"[DEFENSE COUNSEL]: The firearm was found a couple blocks away from him down another street.

THE COURT: Okay.

[DEFENSE COUNSEL]: The only firearm that was found on a person was on his codefendant.

THE COURT: And the firearm that was found down the street from him, was it loaded?

7

[DEFENSE COUNSEL]: It was not loaded. Did not have a magazine in it, Your Honor.

[THE STATE]: He had the magazine on him, Your Honor. Sorry.

THE COURT: What's that?

[THE STATE]: He had the magazine on him."

Defense counsel clarified that a magazine had been discovered "underneath [the defendant's] body when they moved him" during his arrest, and that the magazine was loaded. Counsel also informed the court that the defendant had been indicted by the federal government in case No. 24CR00116-SPM, which included a release order with specific conditions.[1] Defense counsel noted that the federal release order stipulated that the defendant must attend federal court, and failing to do so would result in a longer sentence in the federal system, which would be added to the sentence he might receive in this case. Additionally, the federal court would cover the costs of the defendant's monitoring and services.

¶ 14    Regarding flight risk, defense counsel argued that a defendant evading arrest would not trigger willful flight under 110-6.1(a)(8) of the Code of Criminal Procedure of 1963 (Code). See 725 ILCS 5/110-6.1(a)(8) (West 2022). To support this argument, counsel proffered two[2] unpublished rule 23 cases.

---

[1]The conditions outlined in the release order included but were not limited to (1) the defendant reporting to U.S. probation services, (2) travel restrictions and location monitoring, (3) residency with his father, (4) a curfew, and (5) regular substance testing.

[2]The cases proffered by the defendant were *People v. Sims,* 2024 IL App (4th) 231335-U, and *People v. Quintero*, 2024 IL App (1st) 232129-U. Both cases held that evading arrest, alone, would not constitute willful flight from prosecution under section 110-6.1(a)(8) because attempting to evade arrest does not equate to intentional conduct aimed at thwarting the judicial process. See *Sims*, 2024 IL App (4th) 231335-U, ¶ 28; see also *Quintero*, 2024 IL App (1st) 232129-U, ¶¶ 21-22. Here, the circuit court's finding that the defendant posed a risk of willful flight from prosecution was not based solely on his attempt to evade the police, making the authority proffered by the defense counsel unpersuasive.

¶ 15 In response, the State maintained that the circuit court's consideration of the defendant's evasion of arrest was proper. Further, the State asserted that the court had already made its findings, emphasizing that the defendant was charged with offenses that were detainable under the Code. The State summarized the key facts, noting that while fleeing, the defendant was seen holding a firearm. Officers lost sight of the defendant, but he was later located by a K-9 hiding in a shed. Near the location where the defendant was found, a 9mm magazine was recovered, and while following his flight path, the K-9 discovered a firearm. Both the firearm and the magazine were sent to a forensic lab, where they were field-tested; the firearm was found to be capable of discharging ammunition from the magazine.

¶ 16 Additionally, the State highlighted the defendant's criminal history, which included charges of armed violence and aggravated unlawful use of a weapon in 2020. In 2021, he was charged with possession of stolen firearms and again with aggravated unlawful use of a weapon. The State argued that the defendant clearly disregards the law, stating:

> "[H]e's gonna continue possessing guns and possessing drugs despite what we do here. There are no conditions that we can do to stop him from getting guns, to stop him from getting drugs. A curfew's not going to stop him from getting his hands on those things, especially the federal one where he's free to do whatever he wants it looks like from 7:00 a.m. to 7:00 p.m."

Based on these points, the State contended that the defendant posed an ongoing danger to the community.

¶ 17 The circuit court then asked the State why it believed the federal judge, who presumably had detailed knowledge of the defendant's charges, deemed release to be appropriate. The State indicated that it had been informed by the Attorney General that the defendant was only charged

with being a felon in possession of a firearm. The State also informed the circuit court that while detained on these offenses, the defendant was charged in a new case with threatening a public official based on an incident that took place in the jail. See 720 ILCS 5/12-9(a) (West 2022). Defense counsel noted in that case,[3] a release order was entered. At the conclusion of the hearing, the circuit court informed both parties that it would take the matter under advisement.

¶ 18     On October 21, 2024, the circuit court issued a written order denying the defendant's request for release. The written order found that that the defendant continues to pose a real and present threat to the safety of the community. In reaching this finding, the court emphasized the seriousness of the underlying, nonprobationable offenses and the previous findings outlined in the detention order from January 11, 2024. Additionally, the written order set forth that the court considered the pretrial reports, particularly noting the defendant's "impulsive, violent, and unlawful behavior while in pretrial custody in the Madison County Jail, where he threated a correctional officer." The court highlighted the specific threats made by the defendant. The court pointed out that the threats were made after the defendant completed two courses titled "Criminal process; the Basics" and "In the Courtroom," which presumably covered appropriate courtroom conduct. Further, the court acknowledged the defendant's involvement with the federal court and the release orders from that court. Specifically, the circuit court noted in its written order that "federal penalties and sanctions for violation of the federal release conditions are unavailable to this court. Even with these enhanced federal penalties and sanctions, the court firmly disagrees with the magistrate judge's release order."

¶ 19     On December 3, 2024, the defendant filed a motion for relief and immediate release under Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). In the motion, the defendant argued

---

[3]Madison County, Illinois, cause No. 24-CF-360.

that (1) the circuit court erred during the January 11, 2024, hearing finding that there is clear and convincing evidence that the offenses occurred; (2) the circuit court erred during the October 18, 2024, hearing when it adopted the prior ruling from the January 11, 2024, hearing that the proof is evident or presumption is great that the defendant committed a detainable offense; (3) the circuit court erred during the October 18, 2024, hearing in finding that the defendant remains a real and present threat to the safety of the community; and (4) the circuit court erred during the October 18, 2024, hearing in ruling that there are no conditions or combination of conditions that would mitigate the threat of safety the defendant poses.

¶ 20    On March 5, 2025, a hearing on the defendant's motion for relief was held. At the outset, the circuit court reviewed the procedural history of the case by noting that the motion filed on September 19, 2024, contained language that challenged the initial detention order rather than addressing a change in circumstances. Additionally, the court explained that since that time, the legal framework surrounding the Code had been clarified. In order to clarify its written order from October 21, 2024, the court informed the parties that although there had been a presumption in favor of release during the January 11, 2024, hearing, subsequent hearings had determined that detention was necessary.

¶ 21    Defense counsel was then allowed to present his argument in support of the defendant's motion for relief. Counsel reiterated the points made in the motion for relief. At the conclusion of his argument, defense counsel informed the circuit court that the defendant had a job opportunity lined up should he be released. Counsel stated that the defendant would be able to work and contribute to society, even if only for a short period, until the defendant's case was set for trial or he entered a plea. The State responded by indicating that it stood on its previous arguments and requested that the defendant's motion be denied.

¶ 22　The circuit court denied the motion for relief and made the following, *inter alia*, oral pronouncements:

> "Okay. So the Court has considered the arguments of counsel. The Court has reviewed the transcripts from the previous hearings, including the transcripts from the January 11th hearing that was conducted by Judge Jumper, as well as reviewed the hearing that was conducted by myself on October 18th of 2024. I reviewed the transcripts of that hearing as well. I've also gone through the orders that have been entered in the files and the particular written findings that are contained in those.
>
> The Court is familiar with the facts of this case having thoroughly given it consideration at the last hearing. The Court has reviewed the claims of error that were raised in the motion for relief. At this time the Court denies the motion for relief."

Then, the circuit court admonished the defendant regarding his appeal rights. That same day, the defendant filed a notice of appeal.

¶ 23　　　　　　　　　　　　　　II. ANALYSIS

¶ 24　Illinois Supreme Court Rule 604(h) governs appeals stemming from the enactment of Public Act 101-652 (eff. Jan. 1, 2023). See *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (vacating the stay of the pretrial release provisions in Public Act 101-652 on September 18, 2023). The relevant portions of Rule 604(h) provide:

> "(1) Orders Appealable. An appeal may be taken to the Appellate Court from an interlocutory order of court entered under sections 110-5, 110-6, and 110-6.1 of the Code of Criminal Procedure of 1963 as follows:
>
>> (i) by the State and by the defendant from an order imposing conditions of pretrial release;

(ii) by the defendant from an order revoking pretrial release or by the State from an order denying a petition to revoke pretrial release;

(iii) by the defendant from an order denying pretrial release; or

(iv) by the State from an order denying a petition to deny pretrial release.

(2) Motion for Relief. As a prerequisite to appeal, the party taking the appeal shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief. The trial court shall promptly hear and decide the motion for relief. Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived.

\* \* \*

(7) Memoranda. The motion for relief will serve as the argument of the appellant on appeal. The appellant may file, but is not required to file, a memorandum not exceeding 4500 words, within 21 days of the filing of the record on appeal. Issues raised in the motion for relief are before the appellate court regardless of whether the optional memorandum is filed. If a memorandum is filed, it must identify which issues from the motion for relief are being advanced on appeal." Ill. S. Ct. R. 604(h) (eff. Apr. 15, 2024).

In this case, the Office of the State Appellate Defender was appointed to represent the defendant. The defendant's appellate counsel did not file a Rule 604(h) memorandum. Instead, on April 10, 2025, appellate counsel filed a "Notice \*\*\* in Lieu of Rule 604(h)(7) Memorandum," informing this court of the defendant's intentions to stand on the arguments presented in his motion for relief.

¶ 25    Pretrial release—including the conditions related thereto—is governed by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending

various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2022). Upon filing a timely, verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f). The State or the defendant may present evidence to the circuit court by way of proffer based upon reliable information. *Id.* § 110-6.1(f)(2). The circuit court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the circuit court concludes the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)).

¶ 26    To set appropriate conditions of pretrial release where the State has filed a petition to detain, the circuit court must determine whether the State has met its burden by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the circuit court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and

14

characteristics of the person;[4] (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.*

¶ 27 Our standard of review of pretrial release determinations is twofold. Where the circuit court is asked to consider the testimony of live witnesses, and make factual findings, such as the State's burden of presenting clear and convincing evidence that conditions of pretrial release would not protect any person or the community, the defendant has a high likelihood of willful flight to avoid prosecution, or the defendant failed to comply with previously ordered conditions of pretrial release, our standard of review is the manifest weight of the evidence. *People v. Morgan*, 2025 IL 130626, ¶ 54. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). Alternatively, where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the circuit court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *Morgan*, 2025 IL 130626, ¶ 54. In the present matter, the parties proceeded solely by proffer, so we will employ *de novo* review.

---

[4]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2022).

¶ 28    First, the defendant argues that the circuit court committed error during the hearing held on October 18, 2024, by adopting the prior rulings from the hearing conducted on January 11, 2024. The defendant, however, does not develop this argument and fails to explain how the circuit court's adoption constituted error. Further, the defendant does not cite or direct us to any relevant case law or statutory authority other than the basic principles of law applicable to the proceeding under the Code. "A reviewing court is not simply a depository into which a party may dump the burden of argument and research." *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56. This is because a reviewing court "cannot be expected to formulate an argument for defendant out of whole cloth." *People v. Inman*, 2023 IL App (4th) 230864, ¶ 13. The appellant is required to set forth his points and the reasons therefor with citation to authority, and points not argued are forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). The defendant's failure to develop his argument and direct us to any relevant authority compels us to find that he has forfeited this claim. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) ("Whether made in the motion for relief alone or as supplemented by [a] memorandum, the form of the appellant's arguments must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities."). Forfeiture aside, a review of the record demonstrates that the circuit court did not restrict defense counsel to advancing arguments limited to dangerousness or conditions during the October 18, 2024, hearing. In fact, as detailed above, the circuit court did just the opposite and allowed defense counsel to proceed as requested.

¶ 29    Next, the defendant argues that the circuit court committed error by finding that there is clear and convincing evidence that the defendant committed a qualifying offense. Here, in seeking the denial of the defendant's pretrial release, the State proceeded under section 110-6.1(a)(6)(O)

of the Code. See 725 ILCS 5/110-6.1(a)(6)(O) (West 2022). That section provides for the denial of pretrial release when

> "the defendant is charged with any of the following offenses under the Criminal Code of 2012, and it is alleged that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case:

> * * *

> (O) Non-probationable violations: (i) unlawful use or possession of weapons by felons or persons in the Custody of the Department of Corrections facilities (Section 24-1.1), (ii) aggravated unlawful use of a weapon (Section 24-1.6), or (iii) aggravated possession of a stolen firearm (Section 24-3.9)[.]" *Id.*

¶ 30    In this case, the defendant was charged with several nonprobationable Class X felonies. The defendant argues that the State's evidence consisted solely of a recitation of the charging document, a brief proffer of minimal facts, and several photographs of a Glock 26 9mm handgun.

¶ 31    We have independently reviewed the evidence presented to the circuit court at the January 11, 2024, hearing on the State's petition. During the hearing, the State proffered a summary of information from the Granite City Police Department. It was indicated that the defendant's vehicle evaded officers who attempted to initiate a traffic stop, eventually becoming disabled on railroad tracks. The occupants, including the individual identified by the State as the defendant, fled on foot. Defense counsel did not contest that the defendant fled from the vehicle. Officers observed the defendant in possession of a firearm, and during the pursuit, they recovered a Glock 26 9mm handgun modified to be fully automatic. Additionally, a loaded magazine was located underneath the defendant at the time of his arrest. Further, officers conducted a search of the vehicle and

17

discovered additional 9mm ammunition. The State also proffered the defendant's criminal history, which included a prior felony firearm conviction.

¶ 32     In the defendant's motion for relief, he denies possession of a firearm and contends that the video evidence presented by defense counsel identified the individual who fled on foot with a gun as a "black male with dreadlocks wearing a white hoodie/jacket." At the time of the defendant's arrest, the defendant was wearing a "black/dark hoodie/jacket," and no firearm was found in his possession. On this basis, the defendant asserts that a third individual was present in the back seat of the vehicle and that all property in the back seat of the vehicle belonged to said individual, who also allegedly fled on foot from the car crash. However, "a fact finder need not accept the defendant's version of the events among competing versions." *People v. Ortiz*, 196 Ill. 2d 236, 267 (2001). Further, the defendant's denial is rebutted by the video evidence proffered by defense counsel, which documents the flight. The video depicts the defendant wearing a jersey-type t-shirt, the back half of which is completely white, over a black hoodie. Additionally, the defendant's denial is further contradicted by the discovery of the firearm along the defendant's flight path, as well as the discovery of a loaded magazine underneath his body and bullets for that magazine found in his vehicle, which contained a large amount of a substance that field-tested positive for methamphetamine. Based on the foregoing, we cannot conclude that the circuit court committed error in finding that by clear and convincing evidence the proof is evident, or the presumption is great that the defendant committed the charged offenses.

¶ 33     Next, the defendant argues that the circuit court erred in finding that the defendant remains a real and present threat to the community. In looking at the nature and circumstances of the offenses charged in this case, possessing a firearm when legally barred from doing so is a serious, dangerous offense. See *People v. Parker*, 2024 IL App (1st) 232164, ¶¶ 74-77. Again, we note that

the firearm discovered while following the defendant's flight path was modified to be fully automatic. Additionally, the defendant was charged in 2021 with possession of a stolen firearm, for which he was convicted and received a three-year IDOC sentence. The defendant's history with firearms shows that he is a danger to the community, as it demonstrates that he has the ability to illegally obtain firearms and a willingness to disobey the law. Equally important and while in possession of a firearm, the defendant's vehicle contained a large amount of field-test-positive methamphetamine. Additionally, he received a separate charge while in detention for threatening a public official. Specifically, the defendant threatened a guard in the Madison County jail, saying he would "kick his ass" and that if the guard entered his cell, he would "F him up." The defendant further stated that he would kill the guard if he ever saw him on the streets. Therefore, the circuit court did not err in finding that the defendant remains a real and present threat to the community.

¶ 34    Lastly, the defendant contends that the circuit court committed error by finding that no conditions or combination of conditions could mitigate the safety threat posed by the defendant. In his motion for relief, the defendant argues that he has been released with conditions in his pending federal case. He contends that although federal penalties and conditions are not available to state courts, the conditions and penalties for noncompliance "are still real and presently active" should he be released.

¶ 35    Like the circuit court, when considering whether a pretrial condition or combination of conditions could reasonably ensure the safety of any other person or the community, we consider the five factors set out in the Code: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting

19

to obstruct the criminal justice process. 725 ILCS 5/110-5(a) (West 2022). No singular factor is dispositive. See *id.*

¶ 36    To the extent that the defendant is arguing that because he was released on conditions in his federal case, he should be released in this case, we are not persuaded. The Code requires the circuit court to make individualized determinations on pretrial release. "Decisions regarding release, conditions of release, and detention prior to trial must be individualized ***." *Id.* § 110-6.1(f)(7). The circuit court after considering (1) the facts presented; (2) the nature and circumstances of the offenses, which include multiple, nonprobationable Class X felonies; (3) the weight of the evidence; and (4) the defendant's history and characteristics, which include a recent IDOC sentence for possession of a stolen firearm and his threatening behavior in the jail which resulted in an additional charge, made an individualized determination to deny pretrial release. The circuit court, being fully aware of the defendant's federal release, found that no conditions or combination of conditions could mitigate the risk posed by the defendant and specifically considered his federal release stating, "Even with these enhanced federal penalties and sanctions, the court firmly disagrees with the magistrate judge's release order." While the circuit court considered the defendant's federal release, that decision was not binding. Accordingly, we agree with the circuit court that no condition or combination of conditions can reasonably ensure the safety of the public and pretrial detention is appropriate.

¶ 37                                    III. CONCLUSION

¶ 38    Based on the foregoing reasons, we affirm the circuit court's orders of January 11, 2024, October 21, 2024, and March 5, 2025.


¶ 39    Affirmed.