2025 IL App (1st) 251472B-U

No. 1-25-1472B

Fifth Division
October 29, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 25 CR 0549101 |
| | ) | |
| JULIAN COLEMAN, | ) | Honorable |
| | ) | James Michael Obbish, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's order denying defendant's pretrial release.

¶ 2    Defendant Julian Coleman appeals from the circuit court's order denying his pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110 *et seq*. (West 2022)), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. On appeal, Coleman argues that the State failed to show by

clear and convincing evidence that he posed a real and present threat to the safety of any person or the community, and no condition or combination of conditions could mitigate his threat to the community. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4      On April 25, 2025, the State charged Coleman with one count of unlawful possession of a weapon by a felon, and two counts of aggravated unlawful possession of a weapon by a felon. The State filed its verified petition for pretrial detention on April 26, 2025, based on the qualifying offense of unlawful possession of a weapon by a felon. The State argued that Coleman should be detained because he posed a real and present threat to the safety of a person or persons or the community based on the specific articulable facts of the case and that no condition or set of conditions could mitigate that threat.

¶ 5      At a hearing that same day, the State proffered that at approximately 11 p.m. on April 25, 2025, officers were on patrol around 1050 West Fullerton Avenue in Chicago when they observed a red Nissan Maxima with heavily tinted windows. The officers pulled the car over. Coleman, who was the sole occupant, was driving. The officers observed Coleman moving from side to side while reaching toward the passenger side of the car. When Coleman rolled down the window, the officers smelled burnt cannabis and saw burnt cannabis on the center console. The officers also saw an open bottle of alcohol on the floorboard in front of the front passenger seat. The officers asked Coleman to step out of the car. Coleman was unable to provide a valid driver's license. The officers then searched the car and found in the glove compartment a loaded Glock 17 gun with an extended magazine, and a bullet in the chamber. Coleman admitted to owning the firearm.

¶ 6      The State also proffered that Coleman had four prior felony convictions, including a 2012

residential burglary for which he was sentenced to five years in the Illinois Department of Corrections after his probation was revoked. The State argued that there were no conditions or combination of conditions that could mitigate the specific risks that Coleman posed, stating that "[d]espite being a four time convicted felon he continually arms himself." The State also asserted that Coleman was carrying a firearm in a "dangerous and reckless manner" because he was driving with open alcohol and cannabis present. The State argued that electronic monitoring or home confinement would not prevent Coleman from rearming himself. In mitigation, defense counsel argued that Coleman lived with his girlfriend and their two children, and he had graduated from high school and had some college education. In addition, counsel argued that Coleman was employed full-time as a delivery driver and is one of the primary caretakers of his children. Counsel argued that all of Coleman's prior convictions were non-violent, the residential burglary conviction was 13 years old, and his other convictions were for possession of a controlled substance. Counsel argued that the State failed to prove Coleman was a danger to any specific person or the community at large, and the court could fashion conditions to ensure he appeared in court and did not possess any firearms.

¶ 7    The court found that the proof was evident and presumption great that Coleman committed the offense. As to whether he was a threat, the court noted Coleman was a convicted felon who "who has no benign reason" to be in possession of a firearm. The court found that Coleman posed a real and present threat to the safety of a person or community in that Coleman was a convicted felon who, by law, was not allowed to possess a firearm. The court found it telling that officers observed Coleman reaching toward the glove compartment, where officers later found the firearm. The court also found that Coleman posed a threat to the officers conducting the traffic stop. The

court also noted the type of weapon recovered from Coleman's glove box was a firearm with an extended magazine with 30 live rounds, indicating that it was an offensive weapon that can be used to cause tremendous harm in a short amount of time, negating any argument that the weapon was to be used for defensive purposes. The court likened a firearm with an extended magazine to "a weapon of mass destruction when you put it on the streets of the City of Chicago." The court found that Coleman posed a threat to the community by being in possession of such a firearm while driving.

¶ 8    On May 2, 2025, the same day as Coleman's preliminary hearing, defense counsel filed a motion for pretrial release with the combination of conditions to include participation in the pretrial supervision program. The motion detailed mitigating factors such as Coleman caring for his children, including one who is autistic, and full-time employment, and requested a hearing to determine the "appropriate condition of pre-trial release."

¶ 9    The court conducted a preliminary hearing at which one of the officers testified as to the facts and circumstances surrounding the stop. Contrary to the facts proffered at the detention hearing, the officer testified that there was a passenger in the car at the time of the stop. The court found probable cause.

¶ 10    During the hearing on Coleman's motion for pretrial release, the State proffered, by way of background, that Coleman had four prior felony convictions, including a residential burglary, for which he was originally sentenced to probation. However, he violated that probation and was resentenced to five years in the Illinois Department of Corrections. In addition, Coleman had been arrested 13 times. The State again argued that the facts of this case involved a loaded gun in a glove box and there were no conditions that would keep the community safe, short of detention.

Defense counsel argued that Coleman's prior felony convictions were nonviolent and committed when he was very young. Coleman lived with his children and the mother of his children, who was present in court, and proffered a letter of support from her. Counsel stated Coleman worked full-time and argued that electronic monitoring, curfew, or restrictions on movement would mitigate any safety concerns.

¶ 11    In denying Coleman's motion for pretrial release, the court remarked that it was impressed by his "resume," but noted its concerns regarding the residential burglary conviction and that he now possessed a handgun. The court found that detention was "currently lawful and appropriate," but said it was not "married to that decision." The court noted it would be best to review the discovery and determine what is on the body-worn camera before considering further arguments regarding conditions.

¶ 12    On June 26, 2025, defense counsel filed a motion for relief. The motion noted that since the detention hearing, discovery and the preliminary hearing testimony established that Coleman's fiancé was a passenger in the front seat at the time of the traffic stop. The defense argued that the State failed to meet its burden by clear and convincing evidence that Coleman committed the offenses charged where the firearm was discovered inside a closed glovebox and the elements of knowledge and possession of the gun were not established. Defense counsel also argued that the State likewise failed to establish that Coleman was a threat that could not be mitigated by conditions. Defense counsel proposed that Coleman be monitored by pretrial services with a curfew and confined to his home 24 hours a day except for work. Counsel also pointed out that Coleman did not attempt to flee and was cooperative when he was stopped by police.

¶ 13    The court held a hearing on Coleman's motion for relief on July 8, 2025. Prior to the

hearing, the State amended the original petition for detention to state that a second occupant was present in the vehicle at the time of the stop. The court was aware of the second occupant as this information was previously presented at the preliminary hearing just prior to the continued detention hearing on May 2, 2025. During the hearing on Coleman's motion for relief, defense counsel argued that an individual was seated in the front seat of the vehicle near the glove box where the firearm was recovered, casting doubt on Coleman's possession. Defense counsel argued that Coleman's criminal history is nonviolent, and this was his first arrest involving a firearm. Coleman tendered a letter from his employer indicating he would have a job if released.

¶ 14 The State argued that the fact that Coleman was not the sole occupant of the vehicle was insignificant because Coleman admitted to owning the firearm. The State further argued that Coleman was a four-time convicted felon who had no business possessing a firearm with an extended magazine capable of firing up to 30 rounds, that he was a danger to the community, and there were no conditions or set of conditions that would mitigate that risk.

¶ 15 The court denied the motion for relief stating that it was concerned about the type of weapon that Coleman was alleged to be in possession of: "I mean when you have the ability to fire 30 shots from a handgun because of the extended nature of the magazine that's kind of hard to swallow that that's just somehow for self-defense." The court further stated that the recovered firearm was a "weapon of almost mass destruction when you put it on the streets of the City of Chicago. No one should possess it ***." This appeal followed.

¶ 16                                    ANALYSIS

¶ 17 Pretrial release is governed by article 110 of the Code, as recently amended by Public Act 101-652 (eff. Jan. 1, 2023). Under article 110 of the Code, a defendant's pretrial release may only

be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022).

¶ 18    When the State files a petition requesting denial of pretrial release, it has the burden to show by clear and convincing evidence that the proof is evident or the presumption is great that a defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of another person or the community, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *People v. Vingara*, 2023 IL App (5th) 230968, ¶ 7; 725 ILCS 5/110-6.1(e) (West 2022). The clear-and-convincing standard "requires proof greater than a preponderance, but not quite approaching the criminal standard of beyond a reasonable doubt." *In re D.T.*, 212 Ill. 2d 347, 362 (2004). Because there was no live witness testimony offered in this case, and the evidence presented below was solely documentary in nature, we review the trial court's decision *de novo*. *People v. Morgan*, 2025 IL 130626, ¶¶ 21, 54.

¶ 19    Coleman's contention on appeal is that the court erred in finding that he poses a real and present threat to the safety of any person or persons or the community. He further argues that if we find he is a threat based on the charges and proffered facts, then we should hold that the threat can be mitigated by conditions.

¶ 20    In making a threat determination, section 6.1(g) provides a non-exclusive list of factors "to be considered in making a determination of dangerousness," including the nature and circumstances of any offense charged, the defendant's history and characteristics, and whether the offense involved a weapon. 725 ILCS 5/110-6.1(g)(1) (West 2022).

¶ 21    Here, despite having been convicted previously of a felony and barred from possessing a firearm, Coleman allegedly had a loaded semiautomatic weapon with an extended magazine and

a bullet in the chamber in the glove box of his vehicle while driving with open alcohol and likely smoking cannabis. Coleman allegedly admitted owning the firearm. Under these specific facts and circumstances, we agree with the court that the State demonstrated by clear and convincing evidence that Coleman posed a threat to the community.

¶ 22    Coleman nevertheless contends that the court erred by solely relying on the nature of the charges to find that he was a threat. We disagree and find the court relied on specific, articulable facts beyond the mere charge to conclude that Coleman was a threat. In a similar case, *People v. Parker*, 2024 IL App (1st) 232164, the defendant, a convicted felon, was charged with possession of a weapon by felon after he was found with a loaded semiautomatic weapon with an extended magazine. The court found that while the firearm itself was not dangerous, the defendant was a four-time convicted felon who was barred from possessing a weapon and armed himself nonetheless with a firearm with an extended magazine. The court affirmed the defendant's pretrial detention, stating it was not unreasonable for the trial court to find that the defendant posed a threat to the safety of any person or the community. *Id*. ¶¶ 13, 74-77. Similarly here, Coleman is a four-time convicted felon who was found in possession of a semiautomatic firearm with an extended magazine and a bullet in the chamber, a substantial threat exacerbated by the potential for user impairment as evidenced by the open alcohol and recently burnt cannabis found inside the car he was driving. Moreover, Coleman does not dispute the court's observation that a firearm of this nature is intended to cause mass destruction on the streets of Chicago, not to serve in a defensive capacity. Thus, the court did not simply rely on the nature of the offense to find Coleman a threat to the community.

¶ 23    Coleman then argues that if this court determines that he is a threat based on the charges

and proffered facts, then we should hold that the threat can be mitigated by conditions. We disagree. The State proved by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat posed by Coleman. Again, in addition to being a convicted felon, the record establishes that Coleman had previously been sentenced to probation and violated those terms, resulting in a five-year prison sentence. Coleman has clearly shown an unwillingness or inability to abide by the law and orders of the court. Accordingly, we find that the State met its burden of proof by clear and convincing evidence that less restrictive means other than detention would not mitigate the threat that Coleman poses to the community.

¶ 24                          CONCLUSION

¶ 25    For the reasons explained above, we affirm the judgment of the circuit court.

¶ 26    Affirmed.